### THE STATE v. GOODSON

#### (138 S. E., 816)

1. CRIMINAL LAW—IN PROSECUTION FOR ASSAULT AND BATTERY WITH INTENT TO KILL, INSTRUCTION HELD ERRONEOUS AS TAKING FROM JURY QUESTION OF COOLING TIME AND FIXING SUCH TIME AS MATTER OF LAW.—In prosecution for assault and battery with intent .to kill, where evidence showed that defendant, suffering from a nervous breakdown, when told of familiarities taken by complaining witness with his wife during his absence, became very excited and attempted to get up, but fell to the floor and was put back in bed, and that after spending a sleepless night he saw complaining witness the next morning and at' once attacked him, *held,* instruction as to cooling time, "The law says you can't know of a thing or hear of a thing done to your child or wife, or your family, yesterday, or some other time that it happened, and go out' to revenge your own wrong," was erroneous as taking from jury question of cooling time and fixing such time as a matter of law.

2. HOMICIDE—IN PROSECUTION FOR ASSAULT AND BATTERY WITH INTENT TO KILL, ISSUE WHETHER REASONABLE COOLING TIME HAD ELAPSED HELD FOR JURY.—In prosecution for assault and battery with intent to kill, evidence *held* for jury on issue whether reasonable cooling time had elapsed between time when defendant learned of familiarities taken with his wife and time of offense.

---

NOTE: As to what is reasonable cooling time, question for the jury in action for homicide, see 13 R. C. L., 791; 3 R. C. L. Supp., 84; 4 R. C. L. Supp., 833.

3. HOMICIDE—WHAT CONSTITUTES COOLING TIME DEPENDS ON NA-
  TURE OF MAN AND MIND AS WELL AS CIRCUMSTANCES AND NATURE
  OF PROVOCATIVE ACT.—What constitutes cooling time ordinarily
  depends on nature of man and laws of human mind, as well as
  nature and circumstances of the provocation, the extent to which
  the passions have been aroused, and the nature of the provocative
  act.

Before HENRY, J., Cherokee, November, 1926. Re-
versed.

J. L. Goodson was convicted of assault and battery with
intent to kill, and he appeals.

*Messrs. Dobson & Vassey,* for appellant, cite: *"Cool-
ing time"* a question for jury: 98 S. C., 509; 28 S. C.,
32; 50 S. C., 424; 55 S. C., 35; 65 S. C., 213; 116 S. C.,
285; 118 S. C., 387; 13 R. C. L., 790; 5 L. R. A. (N. S.),
809; 29 C. J., 1147, Sec. 133. *Whenever one may kill in
his own defense, another may act in his behalf:* 78 S. C.,
253; 108 S. C., 95; 121 S. C., 168; 115 S. C., 481; 21 Cyc.,
826; 13 R. C. L., 837; 65 S. C., 213. *Standard is what
would a reasonable man have done under the circumstances:*
104 S. C., 250; 89 S. C., 228; 13 S. C., 466.

*Solicitor I. C. Blackwood,* for respondent.

July 11, 1927.

The opinion of the Court was delivered by MR. JUSTICE
STABLER.

On July 23, 1926, the defendant, Goodson, with a pistol,
shot and wounded one J. F. Cline.

The following facts are undisputed: Goodson and
Cline were neighbors in the Town of Blacksburg,
Cherokee County, residing on adjoining lots which
were separated by a fence. Goodson, who was in the
mountains for the purpose of recuperating from a nervous
breakdown, had left his store in Blacksburg in charge of
his wife during his absence, and she had living with her her
son Frank and a Mrs. Dickson. Cline was at that time
alone in his home, his wife being away. On Friday, July
18th, between sundown and dark, Cline telephoned the

Goodson home; Mrs. Goodson answering the telephone. Immediately thereafter she went to Cline's house, and a few minutes later was seen coming out of the side door in a hurry and in an excited condition. Subsequently, she had blue spots on her arms for some days. The defendant returned home the following Sunday, being in a worse condition than he was before he went away, and the doctor was called in to see him that afternoon and night. On account of his nervous condition, Mrs. Goodson did not tell him that afternoon what had occurred between her and Cline, but on the following Tuesday afternoon, upon his appearing to be somewhat better, she gave him her version of what had occurred at Cline's home the Friday evening before. Thereupon he became very much excited, got up, fell to the floor, and had to be put back to bed, and had to have the doctor again called to him. He slept none that night and was in a nervous and excitable condition the next morning. About the middle of that day, Wednesday, he got up, but was too feeble to walk without a stick. Late in the afternoon he saw Cline in the back yard, and immediately went out through the side gate to where he was, at which time and place the altercation took place between them, and Cline was shot.

Goodson was indicted for assault and battery with intent to kill, found guilty by the jury as charged in the indictment, and sentenced by the presiding Judge to imprisonment for from two to four years.

The defendant appeals and complains of error in the charge. We shall consider only the first exception, which is taken to the following charge of the trial Judge:

"If a man had not had time to cool off, and kill before he has cooling time, the law says a man must restrain himself; that is what the law is for, to prevent a man from giving away to his passion, and the law says you can't know of a thing or hear of a thing done to your child or wife, or

your family, yesterday or some other time that it happened, and go out to revenge your own wrong."

The appellant contends that the trial Judge committed error of law by this charge, in that he took from the jury altogether the question of cooling time and attempted to fix such time as a matter of law.

The solicitor, in his oral argument, with his usual candor and honesty, stated that the serious question presented by the appeal was whether the Judge erred in his charge as to cooling time, but contended that, if such charge was error, under the testimony it was harmless.

We do not agree with the solicitor's contention. Mrs. Goodson testified that on the Friday evening in question Cline called up her home and asked her to come over, as he wanted to see her on business; that she went over to his house about 6 o'clock, and that when she came to the door he stated to her that he wanted to talk with her on some business and invited her in; that when she walked in he locked the door and put the key in his pocket; that when she attempted to get out of the house he caught her by the arm and told her that he wanted to kiss her; that she unlocked the side door and ran out; and that he asked her not to tell what had happened. Cline denied the truth of Mrs. Goodson's testimony, but it was what she told her husband on Tuesday following the alleged attack on Friday before, and was no doubt accepted by the defendant as being true. In addition, in connection with this, as has been pointed out, the uncontradicted testimony tended to show that at the time the defendant's wife informed him of the alleged attack upon her by Cline, he was in a nervous weak condition, and that he became greatly excited, got up, fell down on the floor, had to be put back in bed, and had to have the doctor called; that he slept none that night, and the next morning was in a nervous, excitable condition; that in the afternoon of that day he saw Cline for the first time and at once made the attack upon him.

Whether, under the facts disclosed by the uncontradicted testimony as to the defendant's physical, mental, and nervous condition, and the testimony tending to show the nature of the provocation, etc., a reasonable cooling time had elapsed, that is, time in which an ordinary man, in like circumstances, would have cooled, was a question of fact for the jury and not one of law to be determined by the Court. Under a proper charge of the law pertinent to this issue, the questions of fact under the testimony were (1) whether there were adequate and reasonable grounds for provocation, and (2) if so, whether a reasonable time had elapsed, from the time the defendant was told of the alleged mistreatment of his wife to the time of his alleged attack upon Cline as a result of such mistreatment, for passion to have cooled and reason to have resumed its sway.

In 13 R. C. L., 790, we find:

"What constitutes 'cooling time,' as it ordinarily is termed, depends on the nature of man and the laws of the human mind, as well as on the nature and circumstances of the provocation, the extent to which the passions have been aroused, and the nature of the act causing the provocation, and therefore, no precise time can be laid down by the Court as a rule of law, within which the passions must be held to have subsided and reason to have resumed its control. The question is one of reasonable time depending on all the circumstances of the particular case; and the law has not defined, and cannot, without gross injustice, define the precise time which shall be deemed reasonable, as it has with respect to notice of the dishonor of commercial paper. What constitutes reasonable time in a particular case is ordinarily a question of fact for the jury; and the Court cannot take it from the jury by assuming to decide it as a question of law."

In *State v. McCants*, 1 Speers, 390, the Court, in speaking of what is reasonable time for cooling, said:

"The standard of what is reasonable, is ordinary human nature; to be applied by the Court, if all the facts and circumstances be found by a special verdict, or to be applied by the jury in giving a general verdict. As to the reasonable time in which cooling should ensue after provocation, no precise rule can be given."

In the same case, at page 391, we find:

"In all cases where the time of cooling may be considered, whether the time be regarded as evidence of the fact of cooling, or as constituting, of itself, when reasonable, legal deliberation, the whole circumstances are to be taken into the estimate in determining whether the time be reasonable. The nature of the provocation, the prisoner's physical and mental constitution, his condition in life and peculiar situation at the time of the affair, his education and habits (not of themselves voluntary preparations for crime), his conduct, manner and conversation throughout the transaction; in a word, all pertinent circumstances may be considered, and the time in which an ordinary man, in like circumstances, would have cooled, is the reasonable time."

We think that the trial Judge, under the facts and circumstances of this case, committed prejudicial error as complained of, and the appellant's first exception is sustained.

We do not deem it necessary to consider the other exceptions.

The judgment of this Court is that the judgment of the Circuit Court be reversed and the case remanded for a new trial.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE and CARTER concur.