1891

The STATE, Respondent v. Eric Douglas LOWRY, Appellant.

(424 S.E. (2d) 549)

Court of Appeals

*David I. Bruck* and *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Staff Atty. Rakale B. Smith,* Columbia, and *Sol. Larry F. Grant,* of York, *for respondent.*

Heard Sept. 8, 1992; Decided Nov. 16, 1992.

Reh. Den. Dec. 16, 1992.

LITTLEJOHN, Acting Judge:

Defendant-Appellant, Eric Douglas Lowry (Lowry), was charged with and convicted of the murder of John Thrower (Thrower). The trial judge charged the law of murder and self-defense but refused to charge the law of voluntary manslaughter. The jury found Lowry guilty of murder. Lowry appeals. We affirm.

## ISSUE
The sole issue for determination by this Court is whether the judge erred in refusing to instruct the jury on the law of manslaughter.

Requirements that a proposition of the law be charged depend entirely upon the facts of the case. Our courts have held that a lesser-included offense instruction, such as manslaughter in a murder case, is required by due process only when the evidence warrants such instruction. *State v. Atkins,* 293 S.C. 294, 360 S.E. (2d) 302 (1987). We examine the facts to determine whether the requested instructions should have been given.

## FACTS

On the afternoon of December 22, 1990, Lowry, Terry Gore and other friends were drinking beer outside Brandon's Grocery in York. The deceased Thrower came walking down the street toward Lowry berating and yelling at him. Thrower, who weighed about three hundred pounds, was mad with Lowry because he believed that Lowry was trying to get him sent to prison for twenty-five years for dropping Pee Wee Gwin on his head.

As the two argued outside the store, Thrower is said to have gotten "up in [Lowry's] face and the two bumped chests." Thereafter Thrower left going inside the store. Lowry remained outside, loaded his pistol, and fired one bullet to try it out into a sign on or near the premises. According to the testimony of the store operator, Lowry entered the store about three minutes later where the argument continued.

The evidence is in conflict as to whether Thrower, who was unarmed, invited Lowry to go outside to settle the problem or whether Lowry, who was armed, invited Thrower to go outside to settle the dispute. There is evidence that Thrower got up from where he was sitting and "started walking toward [Lowry] and asked him if he wanted to take it outside," and that Thrower advanced within arms length of Lowry before Lowry pulled his gun and shot Thrower through the heart. Thrower, who had been drinking considerably, fell face down on the floor of the store, obviously helpless. Lowry then shot him in the back of the head using vile language indicative of malice as he did so. Either the bullet in the heart or the bullet in the back of the head was sufficient to cause death.

There was no sufficient legal provocation to reduce the wrongful killing from murder to voluntary manslaughter, but assuming that there was sufficient legal provocation for the initial firing into the heart, there was certainly no sufficient legal provocation to warrant the firing of a second bullet into the head of a man who lay helpless on the floor.

## DISCUSSION

Voluntary manslaughter is usually defined as the unlawful killing of a human being in sudden heat of passion upon a sufficient legal provocation.

In discussing the issue, the Supreme Court of South Car-

olina in *State v. Gardner*, 219 S.C. 97, 64 S.E. (2d) 130 (1951) said:

> . . . In determining whether the act which caused death was impelled by heat of passion or by malice, all the surrounding circumstances and conditions are to be taken into consideration, including previous relations and conditions connected with the tragedy, as well as those existing at the time of the killing. . . . Our decisions are uniformly to the effect that where death is caused by the use of a deadly weapon, words alone, however opprobrious, are not sufficient to constitute a legal provocation. [Cites Omitted]

We find no evidence in the record to justify a finding of a legal provocation as required by law of voluntary manslaughter. The evidence as recited hereinabove certainly warrants a finding of malice on the part of Lowry. He loaded his gun, tried it out, went in the store to pursue the argument, and shot Thrower in the chest. After the first fatal bullet was fired, a second bullet was also fired into the back of the head of a man who lay helpless on the floor.

Implicit in the jury's verdict is a finding that Lowry did not kill in self-defense. Also implicit in the jury verdict is a finding that the killing was accompanied by malice.

The view taken by the judge and our affirmance finds support in cases heretofore decided by the Supreme Court of South Carolina.

In *State v. Gandy*, 283 S.C. 571, 324 S.E. (2d) 65 (1984), the defendant was convicted of murder. The sole issue submitted to the Supreme Court was whether the trial judge erred in failing to charge the law of involuntary manslaughter. The Court said:

> The trial judge charged the jury on the law of murder and voluntary manslaughter. The jury returned with a verdict on the murder charge; therefore, it is clear that malice was found at the time of the killing. Having found malice, the jury could not have returned any verdict on manslaughter, voluntary or involuntary.

By a similar reasoning, the jury herein having found that

Lowry did not kill in self-defense and having found that the killing was accompanied by malice, we find no error.

Affirmed.

GARDNER, J., concurs.

GOOLSBY, J., dissents (in separate opinion).

GOOLSBY, Judge (dissenting):

I respectfully dissent. The evidence, when viewed in the light most favorable to the defendant Eric Douglas Lowry, required a jury charge of voluntary manslaughter.

To warrant the refusal of a charge of voluntary manslaughter where the defendant is charged with murder, there must be no evidence tending to reduce the crime from murder to voluntary manslaughter. *State v. Damon*, 285 S.C. 125, 328 S.E. (2d) 628, *cert. denied*, 474 U.S. 865, 106 S.Ct. 187, 88 L.Ed. (2d) 156 (1985), *overruled on other grounds, State v. Torrence*, 305 S.C. 45, 406 S.E. (2d) 315 (1991) (Toal, J., concurring). Voluntary manslaughter is defined as the unlawful killing of another human being in a sudden heat of passion upon a sufficient legal provocation. *State v. Davis*, 278 S.C. 544, 298 S.E. (2d) 778 (1983). Although words alone are generally insufficient to constitute a sufficient legal provocation where the killing is accomplished by means of a deadly weapon [*State v. Gardner*, 219 S.C. 97, 64 S.E. (2d) 130 (1951)], words accompanied by hostile acts may be sufficient to reduce a charge from murder to voluntary manslaughter. *State v. Mason*, 115 S.C. 214, 105 S.E. 286 (1920); McAnich and Fairey, THE CRIMINAL LAW OF SOUTH CAROLINA at 155 (2d ed. 1989); *see Gardner*, 219 S.C. at 105, 64 S.E. (2d) at 134 (a charge of manslaughter held warranted where the defendant said his wife "jumped on me" and "me and her got into it" since these expressions could be construed to mean that there was some overt, threatening act or a physical encounter had occurred just prior to the defendant's stabbing of his wife).

As the majority notes when discussing the events that occurred outside the store, Thrower, a much larger man than Lowry, approached Lowry and accused Lowry of trying to get him sent to the penitentiary. Thrower then got "up in [Lowry's] face" and the two "bumped chests."

After Lowry entered the store, the majority fails to mention, Thrower told Lowry "he wasn't shit [and] you think you are a big man because you got a gun." Immediately following this, Thrower got up from where he was sitting and "started walking toward [Lowry] and asked him if he wanted to take it outside." When Thrower got to within "arm's reach" of Lowry, Lowry shot and killed him.

Aside from the events outside the store, the evidence of what occurred inside the store, that Thrower cursed, threatened, and menaced Lowry moments before Lowry shot and killed him, entitled Lowry to the manslaughter charge.

I do not attach to the jury's finding that Lowry did not act in self-defense the significance that the majority does. While Lowry's actions in loading and apparently test-firing his pistol after Thrower bullied him and before he followed Thrower into the store and in shooting Thrower in the head after he shot him in the chest weaken his claim of self-defense, these actions are, nonetheless, consistent with a person acting in the heat of passion. *See State v. Gilliam,* 296 S.C. 395, 397, 373 S.E. (2d) 596, 597 (1988) ("[The] jury may fail to find all the elements for self-defense but could find sufficient legal provocation and heat of passion to conclude the defendant was guilty *of* voluntary manslaughter.").

Regarding the case relied on by the majority, *State v. Gandy,* 283 S.C. 571, 324 S.E. (2d) 65 (1984), it is not controlling here. The case involved the issue of whether involuntary manslaughter, not voluntary manslaughter, should have been charged when the indictment alleged murder. Moreover, *Casey v. State,* 305 S.C. 445, 409 S.E. (2d) 391 (1991), in expressly overruling *State v. Patrick,* 289 S.C. 301, 345 S.E. (2d) 481 (1986), a case which expressly relied on *Gandy,* necessarily overruled *Gandy* to the extent *Patrick* mirrors *Gandy.*

Like the majority, I do not reach the question of sufficient cooling time between the events outside and the events inside the store. The question, however, is ordinarily one for the jury. *State v. Goodson,* 140 S.C. 357, 138 S.E. 816 (1927).

I would reverse and remand for a new trial.