15136

STATE v. EDWARDS

(10 S. E. (2d), 587)

*Messrs. Louis Rosen* and *Thomas R. Wolfe,* for appellant.

*Mr. A. J. Hydrick, Solicitor,* for the State.

August 2, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

In the opinion prepared in this case by Mr. Justice Baker and concurred in by Mr. Acting Associate Justice Lide, the conclusion is reached that the judgment below should be reversed. For the reasons therein stated, it is held that a new trial should be ordered because of error in the admission of evidence.

We adopt and concur in the decision of all of the questions discussed and passed upon in the opinion of Mr. Justice Baker, except his disposition of the exceptions relating to the admission of evidence. As to these exceptions we are constrained to reach a different conclusion. In our opinion all of the exceptions should be overruled, and the judgment affirmed.

The determination of the relevancy and materiality of a photograph is left to the sound discretion of the trial Judge. We agree that photographs which are calculated to arouse the sympathies or prejudices of the jury are properly excluded if they are entirely irrelevant or not substantially necessary to show material facts or conditions. The picture showed the head and torso of the dead Negro woman, Maggie McDaniel, and was introduced in evidence when Dr. W. L. Glennon was on the stand. The doctor had

examined the dead body and the fatal wound forty-eight to seventy-two hours after the commission of the crime, and he identified the picture as being that of the woman upon whose body he had conducted a post mortem. A sister of the deceased, after viewing the body, testified that she had great difficulty in making identification because of its advanced stage of decomposition. Identification with her was made possible largely by recognizing the feet of the deceased. A son of the deceased woman testified, upon viewing the photograph, that he recognized the deceased as his mother by her irregular teeth, and from other characteristic features. It seems to us that it was a wise precaution on the part of the officers to take the photograph objected to, in order to insure identification.

According to the evidence, the dead body of Maggie Mc-Daniel was found on the side of a public road in Orangeburg County on the fourth Saturday in October, 1938, Her throat had been cut from ear to ear. The defendant, her husband, was convicted of murdering her, upon testimony which satisfied the jury of his guilt beyond a reasonable doubt. The body was not discovered for several days, and when discovered dissolution had set in. All of the witnesses, without exception, testified as to the gruesome condition of the body and of the presence of maggots in large numbers in and near the wound.

In our opinion the trial Judge did not abuse his discretion in admitting the photograph as being relevant, nor can we attach any importance, in view of the facts of this case, to the contention that the photograph prejudiced the jury against the defendant. Everything depicted by the photograph was, subsequent to its introduction, testified to in detail by the witnesses.

Nor can we concur in the view that the lower Court erred in allowing the witness, Hawthorne, to testify that stains found by him on the clothing of the appellant were blood stains.

It is said in 20 Am. Jur., Section 887, page 746: "While expert testimony is often used to identify blood or bloodstains by chemical analysis or to distinguish by the microscope between human and animal blood, the identification of a substance as blood has often been permitted to be made by a non-expert. The existence of blood in large quantities and of stains recent and marked may be distinguished by most persons. While it is more difficult to discover the character of a few drops or a smaller quantity, it does not necessarily follow that those who from experience and observation have become familiar with the appearance of blood cannot testify to its reality as a matter of fact."

And the same rule is expressed in 2 Jones on Evidence, 4th Ed., Section 361, page 675: "The testimony of the chemist who has analyzed blood, and that of the observer who has merely recognized it by the use of the senses belong to the same legal grade of evidence, and though the one may be entitled to greater weight than the other with the jury, the exclusion of either is not sustainable."

Naturally if the effort had been made by the State to distinguish between human blood and the blood of some animal, the question would have been one of science, and would have required the application of very great skill and knowledge, but no such effort was made.

The witness, Hawthorne, testified that he went to the apartment of the defendant within about five days after the homicide was discovered, searched the clothes closet of the defendant and found what he regarded as blood stains on a pair of trousers. He called this to the attention of the defendant, who explained that he, with his clothes on, frequently cut up and cooked fish heads, chicken necks, and backbones, and that the stain might have resulted from this practice. Upon trial the prisoner denied having had any conversation with Mr. Hawthorne with reference to the blood stains.

Many cases are cited in support of the texts we have quoted, from American Jurisprudence and 2 Jones on Evidence, and in our opinion the rule announced is sound and correct. An examination of the record convinces us that the defendant received a fair and impartial trial, free from error.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM and MR. JUSTICE STUKES concur.

MR. JUSTICE BAKER and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE dissent.

MR. JUSTICE BAKER (dissenting):

The appellant, Ernest Edwards, was placed on trial at the September, 1939, term of the Court of General Sessions for Orangeburg County on an indictment charging him with the murder of one, Maggie McDaniel, his estranged (?) wife. The deceased was known as Maggie McDaniel prior to her marriage with the appellant, and it appears continued to be known by this name.

Upon the completion of the testimony for the State a motion by appellant for a directed verdict of "Not Guilty" was made, and by the trial Judge refused.

The jury brought in a verdict of "Guilty." Before sentence, appellant made a motion for a new trial, which was refused, and he was sentenced to suffer the penalty of death by electrocution.

He has appealed to this Court upon four exceptions. We will not consider these exceptions in their order, although they will be discussed separately.

Exception two complains that a verdict of "Not Guilty" was not directed for appellant.

The evidence relied upon by the State was wholly circumstantial. In the recent case of *State v. Kimbrell*, 191 S. C., 238, 4 S. E. (2d), 121, 122, this Court laid down the rule of law where circumstantial evidence is relied upon for a conviction, in the language following:

"Where it is undertaken by the prosecution in a criminal case to prove the guilt of the accused by circumstantial evidence, not only must the circumstances be proven, but they must point conclusively—that is, to a moral certainty—to the guilt of the accused; they must be wholly and in every particular perfectly consistent with each other, and they must further be absolutely inconsistent with any other reasonable hypothesis than the guilt of the accused. *State v. Langford,* 74 S. C., 460, 55 S. E., 120; *State v. Aughtry,* 49 S. C., 285, 26 S. E., 619, 27 S. E., 199; *State v. Hudson,* 66 S. C., 394, 44 S. E., 968, 97 Am. St. Rep., 768.

"Every circumstance which is relied upon by respondent as material must be brought to the test of strict proof. All of the facts proved must be consistent with each other, and, taken together, should be of a conclusive nature and tendency, producing a reasonable and moral certainty that the appellant and no one else committed the offense charged. It is not sufficient that they create a probability, though a strong one; and if, therefore, assuming all the facts to be true, which the evidence tends to establish, they may yet be accounted for upon any hypothesis which does not include the guilt of appellant, then the proof fails. The reason for this is that all presumptions of law, independent of evidence, are in favor of innocence, and every person is presumed to be innocent until he is proved to be guilty. As has often been stated, it is not sufficient to establish a probability of guilt arising from the doctrine of chances that the fact charged is likely to be true."

Using the above statement of the law as a measuring stick, we are of the opinion that the evidence in this case compelled the trial Judge to submit the issue of the guilt or innocence of the appellant to the jury. We refrain from discussing the evidence since the case should be sent back to the Court of General Sessions for Orangeburg County for a new trial for reasons hereafter given.

Exception four complains that the law of manslaughter should have been charged the jury. The theory upon which the State prosecuted this appellant for murder was that appellant deliberately planned the unlawful killing of the deceased, Maggie McDaniel, and that he carried this plan into execution, using a deadly weapon to effect his purpose of taking her life. The use of a deadly weapon itself implies malice. If the jury reached the conclusion from the other evidence in the case, circumstantial though it be, that the appellant was the one who wielded this deadly weapon, then there was no element of manslaughter in the case. Where a deadly weapon is used, and a person is killed, and there is no evidence whatsoever tending to reduce the crime from murder to manslaughter, then it is not only unnecessary for the trial Judge to charge the jury the law as to manslaughter, but it is improper to do so.

Where a careful examination of the testimony fails to suggest any theory upon which a verdict of manslaughter could rest, a new trial should not be granted for failure to charge upon a phase of the law to which the testimony could not in any reasonable view be made to apply. *State v. Adams,* 68 S. C., 421, 47 S. E., 676.

In *State v. Du Rant,* 87 S. C., 532, 70 S. E., 306, 307, it is stated: "The requirement of the Constitution that the judge shall declare the law does not mean that the judge shall tell the jury all about that branch of the criminal law under which the crime charged in the indictment falls; but it means that he shall explain so much of the criminal law as is applicable to the issues made by the evidence adduced on the trial. The purpose of a charge is to enlighten the jury. This purpose is accomplished by a statement of the law which fits the concrete case; it is defeated by a discourse filled with abstract legal propositions having the effect of confusing the minds of the jury. For example, in a trial for murder, when the evidence shows beyond dispute an as-

sassination, the law of self-defense and the law of manslaughter have no bearing on the issue, and there is no duty of the judge to waste time in discrimination and definition pertinent to those subjects."

In *State v. Weldon*, 89 S. C., 308, 71 S. E., 828, one of the main issues on appeal to this Court was the failure of the trial Judge to charge the law as to manslaughter and self-defense, the defendant-appellant having been convicted and sentenced on an indictment charging murder. In passing upon this exception, the Court had this to say: "There is no merit in the exceptions to the charge. Instructions to the jury on the subject of self-defense and manslaughter had no application to the case. The evidence admitted of no other inference than that Elihu Moye had been assassinated in his own house, and the sole issue before the jury was whether the defendants had participated in the murder. *State v. Du Rant*, 87 S. C., 532, 70 S. E., 306. For the same reason, the defendants cannot complain of a failure to elaborate the meaning of the word 'malice,' for there could be no doubt of the malice of the malefactor who committed the homicide."

In *State v. Jones*, 133 S. C., 167, 130 S. E., 747, the case of *State v. Du Rant, supra,* is cited and quoted from with approval, on the issue under discussion.

Exception one alleges error in permitting the solicitor, over the objection of appellant, to introduce in evidence a picture of the dead body of Maggie McDaniel, apparently shrouded in a white sheet, only the face and head being visible. The record shows that there were four photographs taken of the deceased, and admitted in evidence, but only one, as described above, has been handed the Court.

The picture or photograph filed in the record is truly gruesome, it having been taken several days after the death of Maggie McDaniel, when decomposition had progressed, and the decomposed flesh had become infected with maggots, all of which the picture depicted. There was no issue that

the woman was dead. There was no issue that she was the one found with her throat cut by a sharp knife or other sharp instrument in the woods near Bowman in Orangeburg County; and while at the time of the introduction of the photograph (photographs) the dead woman had not been identified by any witness as being Maggie McDaniel, the State did not then or thereafter depend upon this photograph (or the photographs) for the identification of the deceased. It is true that a son of the dead woman was shown these photographs while on the witness stand, and asked if there were any "marks" thereon by which he could recognize his mother, and replied, "Her teeth out on the side like that," and that the other features were features of his mother. However, there was never any real issue in the case that the dead body found in the woods was not that of Maggie McDaniel, and as aforesaid the State did not have to resort to the use of this photograph *for the purpose of identifying the deceased.*

In 20 Am. Jur., Evidence, Paragraph 729, under the heading "Relevancy of Photographs; Prejudicial Character," it is stated: " * * * , Photographs that are calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions."

We think there can be but little, if any, doubt that the admission of this photograph was highly prejudicial to the appellant. It was capable of prejudicing not only the jury but the trial judge.

Where one is being prosecuted by the State for the commission of crime, and especially when the punishment to be meted out is death, should there be a conviction, "exhibits" offered on behalf of the State should bear directly on the issue of the guilt of the accused; and "exhibits" which can only tend to inflame and arouse the passion of the jury, and prejudice it against the accused, should not

be admitted in evidence; that is to say the "exhibit" must have some probative value, and not merely prejudicial value.

This exception is well taken and should be sustained.

Exception three alleges error for that the trial Judge permitted the witness, Hawthorne, to give "opinion evidence" that stains on clothing of the appellant found in appellant's home were bloodstains.

This witness, Hawthorne, is a detective of the New York City Police Department. He had testified that in examining the apartment of the appellant, he saw several suits of clothes, among which was a black suit, and that he took possession of this black suit because he found some stains on the right trouser leg, and submitted the clothes (presumably the trousers) to the laboratory of the police department to get a report, and received one. This report was of course not admissible, and the trial Judge so held when it was offered in evidence; and the chemical expert, a Dr. Weimer, who examined the clothing, was not present to testify. We now quote from the record:

"Re-direct Examination by Solicitor Hydrick:

"Q. When you submitted the clothes to your laboratory did you get a report? A. Yes, sir.

"Q. Have you that report with you? A. Yes, sir.

"The Court: The witness stated that there were stains on the trousers. I would like a little more light as to what experience, if any, he has had with bloodstains.

"Solicitor Hydrick to the witness:·

"Q. State whether or not you have had any experience with bloodstains? A. For the past eight years I have worked on an average of one hundred homicide cases a year, with my detective partners, where blood is the predominating factor.

"Q. With that experience tell us whether or not the stains that you saw on these trousers were bloodstains?

"Mr. Rosen: We object.

"The Court: After stating the facts I think he can give his opinion. I would like to know if, when he stated that bloodstains were a predominating factor in his work on these homicide cases, he meant bloodstains on clothing?

"The Witness: Yes, sir; bloodstains on clothing.

"Solicitor Hydrick to the witness:

"Q. With that background would you state whether or not, in your opinion, the stains you saw on those trousers were bloodstains? A. I would say that they were bloodstains."

In *State v. Griggs,* 184 S. C., 304, 192 S. E., 360, 364, it was held that a coroner, who was also an undertaker, and had taken the course involving anatomy required by the States of South Carolina and North Carolina, was not qualified as an expert to give his opinion as to the cause of the death of the alleged murder victim who had received a blow on the head, inflicted with a Coca-Cola bottle, sufficient to fell him, and a pistol shot wound on the same night.

In discussing the exception alleging error in permitting the coroner to give his opinion as to which of the two wounds produced death, this Court stated: "We are not inclined to broaden the field of 'expert testimony' or opinion evidence"; and we are not now so inclined. This witness had testified as aforesaid that there were "marks" on the right trouser leg of the suit of clothes owned by appellant, and that he took the clothes to the city police laboratories for analysis. Notwithstanding his vast experience in working on homicide cases "where blood is the predominating factor" he did not know if the stains were bloodstains. When the trousers were exhibited during the trial of this case there were holes therein where the stained portion had been taken out for a chemical analysis, which was necessary for even Dr. Weimer to determine if the stains were that of blood. While the solicitor in his printed brief makes the issue that the witness did not testify that the bloodstains

were from human blood, yet this was the inference which it was intended would be drawn from the testimony, and if not, then the testimony had no relevancy or probative value.

The admission of this testimony—as opinion evidence—under the circumstances, was especially harmful for that the jury was compelled to realize that the witness was in effect testifying to the conclusion reached by said Dr. Weimer as reflected by his report of the chemical analysis which had been offered in evidence, and excluded.

Counsel for appellant were appointed by the Circuit Court to defend him, he being without counsel. The record discloses that they have ably performed their duty, both in the Court of General Sessions, and in this Court, and we desire to express our appreciation to them.

Exceptions one and three should be sustained, the judgment appealed from reversed, and the case remanded for a new trial.

MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concurs.