22277

The STATE, Respondent, v. Shellie DAMON, Appellant.
(328 S. E. (2d) 628)

Supreme Court

*David I. Bruck*, and *S. C. Office of Appellate Defense*, Columbia, *O. Harry Bozhardt*, and *C. Bradley Hutto*, Orangeburg, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.*, and *Carlisle Roberts, Jr.*, all of Columbia, and *Solicitor Joseph P. Mizzell*, Orangeburg, *for respondent.*

Heard March 11, 1985.

Decided April 4, 1985.

HARWELL, Justice:

An Orangeburg County jury convicted the appellant Shellie Damon of the murders of Ernest Felder and Adlee Bowman. It recommended a life sentence for the murder of Mrs. Bowman and a death sentence for the murder of Mr. Felder. This case consolidates the appellant's direct appeal with mandatory review of the death sentence pursuant to S. C. Code Ann. § 16-3-25 (1983 Supp.). We affirm.

The appellant and his girlfriend, Ethel Jones, lived in a

trailer owned by Ethel's great-uncle, Ernest Felder, located behind Mr. Felder's house. On Saturday, July 16, 1983, the appellant and his brother drove to the home of a marijuana dealer and inquired when he would have some marijuana. They then returned to the trailer. Ethel told the appellant that if he left again she would be gone. He stole $5.35 from her cigarette and jewelry boxes and left. She left the appellant a note that she would spend the night with her mother. The appellant and his brother returned to the trailer at about 11:00 P.M., and the brother left. The appellant owned no vehicle.

Mrs. Adlee Bowman, a 63 year old widow, was visiting in the home of the 68 year old Mr. Felder. The two widowed individuals had been "going together" for about 15 years. The next day, the bodies of Mr. Felder and Mrs. Bowman were found inside the Felder home. There was no evidence of a break in. Both victims had been struck in the head at least 24 times with a hammer. The left side of Mr. Felder's face was crushed and depressed. Both victims had skull fractures and lacerations. Mr. Felder's skull was exposed in one spot about two and one-half inches in length. The autopsy revealed the time of death to be about 11:30 P.M.

On late Saturday night and early Sunday morning, the appellant was seen driving Mr. Felder's truck. He drove it to the marijuana dealer's home and showed off a roll of money. He tried to sell the dealer (Myers) two revolvers which Mr. Felder kept in the truck and some food stamps of the same denominations as those Mrs. Bowman had in her purse. He told Myers and Will Keitt that he had caught Ethel in bed with Mr. Felder, that he had "knocked them," and that he believed he killed them.

The appellant contends that the trial court erred in refusing to charge voluntary manslaughter. We disagree.

In a trial for murder growing out of the use of a deadly weapon, it is not necessary to charge manslaughter where the testimony fails to suggest any theory upon which a verdict of manslaughter could rest. *State v. Norris,* 253 S. C. 31, 168 S. E. (2d) 564 (1969). Yet, to warrant the court in refusing to charge manslaughter, there must be no evidence tending to reduce the crime from murder to manslaughter. *Id.* Voluntary manslaughter is the unlawful killing of a human

being in sudden heat of a passion upon sufficient legal provocation. *State v. Gandy*, 324 S. E. (2d) 65 (S. C. 1984). The law to be charged must be determined by the evidence presented. *State v. Rogers*, 275 S. C. 485, 272 S. E. (2d) 792 (1980).

The appellant asserts that a jury could have concluded that his mistaken belief that Ethel was in bed with Mr. Felder was sufficient legal provocation to reduce the killing of Mr. Felder to voluntary manslaughter. We disagree. The record reveals no actions by the deceased individuals to constitute legal provocation. *State v. Butler*, 277 S. C. 452, 290 S. E. (2d) 1 (1982). The law will not classify a killing as manslaughter on the basis of a mistaken and baseless idea in the mind of the killer.

The appellant next contends that the court erred in defining malice to include "doing of a wrongful act intentionally without any justification or excuse." He argues that the jury should have been charged that malice excludes not only justification but legally sufficient provocation. We have decided that no manslaughter charge was appropriate. Therefore, the judge committed no error in deleting any reference to provocation from his definition of malice.

Finally, the appellant contends that the death sentence must be set aside because the jury was not properly instructed on the statutory aggravating circumstances of murder committed "while in the commission of" robbery or larceny with a deadly weapon. Although no objection to the charge was made at trial, we shall examine it *in favorem vitae*. The judge did not charge the statutory language verbatim. However, he charged the jury that, in order to recommend death, it must find the existence of the aggravating circumstances beyond a reasonable doubt. He then described the elements of armed robbery and larceny with the use of a deadly weapon and stated:

> Should you fail to find beyond a reasonable doubt that the circumstances existed *at the time the murder was committed* then you would . . . recommend life imprisonment. (emphasis added.)

> The better practice would have been to charge verbatim the statutory language of murder committed "while in the commission of" an enumerated crime.

However, the record reveals without question that the murders were committed "while in the commission of" armed robbery or larceny with the use of a deadly weapon. The jury verdict in the guilt phase established that the appellant murdered Mr. Felder and Mrs. Bowman. The record is replete with evidence that property belonging to the deceased individuals was stolen in a continuing sequence of criminal acts at the time of the murders. The drawers of furniture in the Felder home were pulled out and ransacked. Mr. Felder's wallet was found near a dead end road, stripped of money. The appellant sold a State's witness food stamps in the same dollar amount as those missing from Mrs. Bowman's purse. On the night of the crimes, the appellant stole Mr. Felder's truck and drove it to the home of a marijuana dealer. Thus, the evidence overwhelmingly establishes the appellant committed the murders "while in the commission of" the above thefts.

The appellant contends his motive for the murders was not robbery; that he stole the victim's property as an afterthought. He argues, therefore, the state could not rely on armed robbery or larceny as an aggravating circumstance. We disagreee. In South Carolina, there is no requirement that the state prove motive.

The appellant excepts to the judge's refusal to charge the jury not to speculate on the deterrent effect of the death penalty. This exception lacks merits. *State v. Patterson,* 327 S. E. (2d) 650 (S. C. 1984).

We have compared the circumstances and vicious nature of Mr. Felder's murder to the facts in other death penalty cases and conclude that the sentence of death is appropriate.[1] The appellant hit the victim in the head over 24 times with a hammer, penetrating the skull. The expert testimony established that death was not necessarily instantaneous and that pain would have been excruciating due to the highly sensitive nerves in the head.

The convictions and sentences are, accordingly,

Affirmed.

LITTLEJOHN, C. J., and NESS, GREGORY and CHANDLER, JJ., concur.

---

[1] *See State v. Chaffee, et al.,* 328 S. E. (2d) 464 (S. C. 1984).