290 S.C. 281 (1986)
350 S.E.2d 180
The STATE, Respondent
v.
Fred H. KORNAHRENS, III, Appellant.
22618
Supreme Court of South Carolina.
Heard September 16, 1986.
Decided October 13, 1986.
*282 *283 William L. Runyon, Jr., Charleston, and S.C. Office of Appellate Defense, Columbia, for appellant.
Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr., and G. Wells Dickson, Jr., and Sp. Prosecutor, Sol. James C. Anders, Columbia, for respondent.
Heard Sept. 16, 1986.
Decided Oct. 13, 1986.
NESS, Chief Justice:
Appellant was convicted of three counts of murder and was sentenced to death for each of the murders. This case consolidates his direct appeal and our mandatory review of the death sentences pursuant to S.C. Code Ann. § 16-3-25 (1985). We affirm the convictions and the death sentences.
Appellant left the home of his girlfriend, Jan Tweed, sometime during the late night hours of February 8, 1985 and drove to the home of his former wife Patti. Armed with a gun and a bayonet, he waited for Patti to arrive home. Shortly after 1:00 a.m., Patti arrived in a car driven by her common-law husband, John Avant. John's 10-year old son Jason was asleep in the back seat of the car.
John parked the car in the carport adjacent to a double-wide mobile home in which Patti's father, Harry Wilkerson, lived. Patti exited the passenger door and appellant confronted her. She called to John and appellant shot her in the chest. Patti ran inside the trailer, calling to Wilkerson for help. Appellant followed Patti into the trailer, where he stabbed Wilkerson several times. Patti ran back to the car-port pursued by appellant. Appellant caught up with Patti near the car and stabbed her to death.
While Patti and appellant were inside the trailer, John Avant ran across the yard into the two-story house in which he and Patti lived. He ran upstairs, retrieved a gun, and heard appellant downstairs yelling for him. Avant jumped from a second-story window and ran around the side of the house. He saw appellant drag Jason across the yard, lay the child down and crouch over him. Avant ran to a neighbor's house and called police.
Appellant spent the remainder of the night in the woods and was arrested the next morning. Two days later, the *284 bodies of Patti Kornahrens, Harry Wilkerson and Jason Avant were discovered in a common grave approximately four miles from the scene. All three died from multiple stab wounds. Jason's hands and feet were bound with packing tape.

Guilt Phase
Appellant asserts error in the trial judge's exclusion from the jury panel of persons who express an inability to impose the death penalty. A prospective juror may be excluded for cause if his views on capital punishment would prevent or substantially impair the performance of his duties as a juror in accordance with his oath and his duty under the law. Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed. (2d) 341 (1985); State v. Spann, 279 S.C. 399, 308 S.E. (2d) 518 (1983). A defendant's right to a jury selected from a representative cross-section of the community is not compromised by the exclusion from the jury panel of persons opposed to the death penalty. Lockhart v. McCree, ___ U.S. ___, 106 S.Ct. 1758, 90 L.Ed. (2d) 137 (1986).
Appellant argues the trial judge erred in refusing to grant a mistrial because of allegedly improper comments by the solicitor during opening statement. In addressing the jury, the solicitor stated the evidence would show the grave was "predug." Appellant asserts the testimony failed to show any evidence the grave was dug prior to the murders, and the solicitor's comment was therefore misconduct warranting a mistrial.
The opening statement serves to inform the jury of the general nature of the action and the issues involved so they can better understand the evidence presented. State v. Brown, 277 S.C. 203, 284 S.E. (2d) 777 (1981). The solicitor is permitted in opening statement to outline the facts the state intends to prove. Highfield v. State, 246 Ga. 478, 272 S.E. (2d) 62 (1980). As long as the State introduces evidence to reasonably support the stated facts, there is no error. Poss v. State, 167 Ga. App. 86, 305 S.E. (2d) 884 (1983).
Approximately 90 minutes elapsed between Avant's telephone call to the police and the discovery of the pickup truck in which appellant transported the bodies to the gravesite. During this time, appellant removed Wilkerson's body from *285 the trailer and loaded it onto the bed of the pickup truck. The bodies of Patti and Jason were also loaded onto the truck bed. Appellant drove four miles to the gravesite, buried the bodies, and camouflaged the grave. He hid his weapons and other items under a log nearby. He drove the pickup truck back to the scene. Police had already arrived, so he drove past the scene a short distance and abandoned the truck.
The State introduced evidence that two officers, alternating, dug a hole similar in size to the grave in approximately 45 minutes. A State witness placed appellant near the gravesite a few weeks prior to the murders. These facts, if believed by the jury, are capable of the inference that appellant would not have had time to dig the grave on the night of the murders. The solicitor's comments were within the permissible scope of opening statement, and we find no error.[1]
Appellant asserts the trial judge erred in failing to direct a verdict on the murder charges because the State failed to prove he had the mental capacity to form the intent to commit murder. He relies upon State v. Milian-Hernandez, 287 S.C. 183, 336 S.E. (2d) 476 (1985), in which this Court held it incumbent upon the State to introduce some evidence of a defendant's sanity when the defendant relies upon the defense of insanity and produces evidence of insanity.
Murder is the killing of any person with malice aforethought, either express or implied. S.C. Code Ann. § 16-3-10 (1985). The majority opinion in Milian-Hernandez cannot be read to expand the elements of the crime of murder. Its narrow holding applies only when the defendant relies upon the defense of insanity. In the present case, appellant stipulated throughout the trial that insanity was not an issue. We find no error.
Appellant asserts error in the trial judge's refusal to charge the jury on the lesser-included offense of voluntary manslaughter. Voluntary manslaughter is the *286 unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation. Heat of passion alone will not suffice to reduce murder to voluntary manslaughter. State v. Plemmons, 286 S.C. 78, 332 S.E. (2d) 765 (1985); State v. Damon, 285 S.C. 125, 328 S.E. (2d) 628 (1985). A charge on a lesser-included offense is proper only when the evidence is susceptible of the inference the defendant committed the lesser offense. State v. Mathis, 287 S.C. 586, 340 S.E. (2d) 538 (1986).
Here, appellant went to the scene in the middle of the night armed with a gun and a bayonet. He lay in wait for the victims, then surprised all three and killed them. Although there was a history of domestic strain between appellant and Patti, there was absolutely no evidence these murders were provoked. The trial judge correctly refused the charge.
Appellant also requested a charge of killing by stabbing or thrusting, S.C. Code Ann. § 16-3-40 (1985). The same set of facts may support an indictment for one of several distinct offenses. State v. King, 289 S.C. 371, 346 S.E. (2d) 323 (1986); State v. Bodiford, 282 S.C. 378, 318 S.E. (2d) 567 (1984). Appellant was indicted for capital murder, S.C. Code Ann. § 16-3-20 (1985). While the grand jury could have indicted appellant for killing by stabbing or thrusting, it did not.
The trial judge may submit to the jury only those offenses for which the defendant has properly been indicted or which are supported by the indictment. See, e.g., State v. Beachum, 288 S.C. 325, 342 S.E. (2d) 597 (1986). An offense is supported by an indictment only when it requires no proof beyond that which is required for conviction of the indicted offense. State v. Norton, 286 S.C. 95, 332 S.E. (2d) 531 (1985). The offense of killing by stabbing or thrusting requires proof of an element not required to prove the crime of murder, i.e., use of a knife or similar weapon to cause death. Since the offense of killing by stabbing or thrusting is not supported by the indictment for murder, the trial judge properly refused to submit the offense to the jury.[2]
*287 Appellant claims his counsel was ineffective in his representation at the trial level. This issue is not appropriate for review on direct appeal, and may be asserted only in proceedings under the Post-Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10 through 120 (1985). State v. Carpenter, 277 S.C. 309, 286 S.E. (2d) 384 (1982).

Sentencing Phase
Appellant asserts error in the trial judge's failure to quash the aggravating circumstances of kidnapping and burglary because the State failed to introduce sufficient evidence of these crimes. The trial judge must submit to the jury those aggravating circumstances with which the State has noticed the defendant, if the aggravating circumstances are "supported by the evidence." S.C. Code Ann § 16-3-20(C) (1985). See also, State v. Plath, 281 S.C. 1, 313 S.E. (2d) 619 (1984). We hold there was sufficient evidence to submit kidnapping and burglary to the jury.
Kidnapping occurs when one unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts or carries away any other person by any means whatsoever without authority of law. S.C. Code Ann. § 16-3-910 (1985). A kidnapping commences when one is wrongfully deprived of his freedom and continues until freedom is restored. State v. Hall, 280 S.C. 74, 310 S.E. (2d) 429 (1983).
While hiding behind the house, John Avant heard voices and witnessed appellant dragging Jason across the yard. Jason's body was found with his feet bound at the ankles and his hands bound behind his back with tape. A pathologist testified Jason had suffered a stab wound to his thigh, which was consistent with him having flexed his body in a defensive posture to fend off a knife wound to the chest.[3] This evidence was sufficient to submit the aggravating circumstance of kidnapping to the jury.
Appellant argues burglary should not have been submitted to the jury because there was no evidence of a breaking. Burglary is the breaking and entering of a dwelling house in the nighttime with a view to commit a felony. S.C. Code *288 Ann. § 16-11-310 (1985).[4] Some evidence of an act of physical force must be shown to establish a breaking. The physical force must be sufficient to remove an obstruction to entry. State v. Dunbar, 282 S.C. 169, 318 S.E. (2d) 16 (1984); In re: Harry C., 280 S.C. 308, 313 S.E. (2d) 287 (1984).
John Avant testified he ran into the house to retrieve a gun, slamming the door shut behind him. He heard the door close and hit the door jamb as he ran up the stairs. While upstairs, he heard appellant inside the house yelling at him. Appellant testified the door was standing open when he entered the house. While the evidence is disputed, John Avant's testimony that he slammed the door and heard it hit was sufficient to submit this issue to the jury.
Appellant asserts error in the admission into evidence of photographs and slides of the gravesite and of the bodies of Jason and Patti after they were moved to the autopsy laboratory. A group of photographs reflects the gravesite as it appeared at various stages during recovery of the bodies. A photograph from the autopsy lab shows Patti's body lying on a table in the same condition in which it was found. There are also several photographs of Jason's body showing the knife wounds to his chest, back and thigh.
A trial judge has considerable latitude in ruling on the admissibility of evidence and his rulings will not be disturbed absent a showing of probable prejudice. State v. Sosebee, 284 S.C. 411, 326 S.E. (2d) 654 (1985). The determination of the relevancy and materiality of a photograph is left to the sound discretion of the trial judge. State v. Edwards, 194 S.C. 410, 10 S.E. (2d) 587 (1940). Photographs which are calculated to arouse the sympathies or prejudices of the jury should be excluded from the guilt phase of a capital case if they are irrelevant or not substantially necessary to show material facts or conditions. State v. Middleton, 288 S.C. 21, 339 S.E. (2d) 692 (1986). See also, State v. Edwards, supra. In the guilt phase of a trial, photographs of the murder victims should be excluded where the facts they are intended to show have been fully established *289 by competent testimony. State v. Waitus, 224 S.C. 12, 77 S.E. (2d) 256 (1953).
The purpose of the bifurcated proceeding in a capital case is to permit the introduction of evidence in the sentencing proceeding which ordinarily would be inadmissible in the guilt phase. State v. Shaw, 273 S.C. 194, 255 S.E. (2d) 799 (1979). In the sentencing proceeding, the trial court may permit the introduction of additional evidence in extenuation, mitigation or aggravation. Id.; See also, State v. Woomer, 278 S.C. 468, 299 S.E. (2d) 317 (1982). In determining whether to recommend a sentence of death, the jury may be permitted to see photographs which depict the bodies of the murder victims in substantially the same condition in which the defendant left them. See, e.g., State v. Shaw, supra. In addition, the manner in which the defendant buried his victims may be relevant to show his efforts to conceal his crime. The trial judge is still required to balance the prejudicial effect of the photographs against their probative value. However, in the sentencing phase, the scope of the probative value is much broader.
We find no error in the admission in the sentencing phase of the photographs and slides. While not pleasant to look at, they show what the defendant himself did to the bodies and nothing more. The appearance of the bodies as the defendant left them has not been altered by decomposition or by any other outside force. While these photographs and slides most likely would have been inadmissible in the guilt phase, under the facts of this case, they were relevant in the sentencing phase to show the circumstances of the crime and the character of the defendant.[5]
Appellant next asserts error in the trial judge's supplemental instruction to the jury during their deliberations. After approximately three hours of deliberations, the trial judge received a note from the foreman *290 inquiring whether the jury's failure to reach a verdict on one count would automatically result in life sentences on all three counts. The jury was brought into the courtroom and, after a bench conference with the solicitor and defense counsel, the trial judge properly explained that each verdict was separate and was not dependent on or affected by a verdict on a different charge. Defense counsel stipulated his consent to the trial judge's explanation to the jury during the bench conference, and again on the record after the charge was given. Appellant now asserts the trial judge's explanation was not responsive to the question. We have fully reviewed the record, and find the trial judge's charge to be responsive and a correct statement of the law. S.C. Code Ann. § 16-3-20(C) (1985).
Appellant asserts the trial judge should have granted a new trial because of the cumulative effect of the asserted trial errors. Since we have found no errors, this issue is without merit.
Lastly, appellant asserts the trial judge was "death qualified," was unconsciously in favor of the death penalty, and "insured that the Appellant would receive the death penalty." He cites no specific instance to support his allegation. We have reviewed the entire record, and find this argument specious. See, Shaw v. State, 276 S.C. 190, 277 S.E. (2d) 140 (1981). The trial judge took meticulous care to preserve the integrity and fairness of the proceeding. There is absolutely no evidence the trial judge harbored any bias or prejudice toward appellant, or that he held or expressed any personal sentiments regarding the death penalty. This argument is patently without merit.

Proportionality Review
Without provocation, appellant surprised and brutally stabbed his ex-wife, her elderly father, and a 10-year-old boy. Jason Avant and Harry Wilkerson suffered defensive wounds in trying to fend off the thrusts of appellant's bayonet. Jason's wounds were inflicted while his hands and feet were bound with tape, rendering him helpless.
Patti Kornahrens was caught by appellant as she fled for her life and was stabbed to death. The bodies of the three victims were loaded onto the bed of a pickup truck and *291 transported to the gravesite. The bodies were buried, one atop the other, in a common grave. There is evidence appellant planned the murder in advance. His car contained weapons, a roll of tape, and a change of clothes.
We have reviewed the entire record and conclude the death sentence was not the result of passion, prejudice or other arbitrary factor, and the evidence supports the jury's finding of the aggravating circumstances. S.C. Code Ann. § 16-3-25(C)(1) and (2) (1985). The death sentence is not excessive or disproportionate to the penalty imposed in similar cases. S.C. Code Ann. § 16-3-25(C)(3) (1985). See, State v. Jones, 288 S.C. 1, 340 S.E. (2d) 782 (1985); State v. Smith, 286 S.C. 406, 334 S.E. (2d) 277 (1985); State v. Damon, 285 S.C. 125, 328 S.E. (2d) 628 (1985); State v. Lucas, 285 S.C. 37, 328 S.E. (2d) 63 (1985); State v. Chaffee, 285 S.C. 21, 328 S.E. (2d) 464 (1984); State v. Copeland, 278 S.C. 572, 311 S.E. (2d) 387 (1982); State v. Woomer, 278 S.C. 468, 299 S.E. (2d) 317 (1982); State v. Gilbert, 277 S.C. 53, 283 S.E. (2d) 179 (1982); State v. Hyman, 276 S.C. 559, 281 S.E. (2d) 209 (1981); State v. Shaw, 273 S.C. 194, 255 S.E. (2d) 799 (1979).
The conviction and death sentences are
Affirmed.
GREGORY, HARWELL, CHANDLER and FINNEY, JJ., concur.
NOTES
[1] Appellant relies on State v. Pee Dee News Co., Inc., 286 S.C. 562, 336 S.E. (2d) 8 (1985) to support his claim of prosecutorial misconduct. There we found reversible error when the solicitor, during cross-examination, asked a series of hypothetical questions employing inadmissible facts in an attempt to plant highly prejudicial innuendo in minds of the jurors. This case is clearly distinguishable.
[2] Section 16-3-40 was originally enacted in 1712, and is commonly referred to as the "dueling" statute. It provides for an automatic penalty of death upon conviction, and is therefore unconstitutional. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed. (2d) 346 (1972).
[3] Jason was ultimately stabbed nine times, twice in the chest, once in the thigh, and six times in the back. One of the chest wounds continued all the way through Jason's body and exited on the other side.
[4] The crime of burglary no longer requires proof of a breaking. See, S.C. Code Ann. §§ 16-11-310 through 313 (Supp. 1985).
[5] Our decision in State v. Patrick, 289 S.C. 301, 345 S.E. (2d) 481 (1986) is distinguishable. In that case, we reversed the death sentence because of several errors in the sentencing proceeding. While one of the errors discussed was the admission into evidence of a photograph of the victim, reversal was required because of an improper characterization of the burden of proof. Our discussion in Patrick of the photograph issue must be read in light of reversal on another issue.