565 S.E.2d 769

Shawn PAULING, Petitioner,

v.

STATE of South Carolina, Respondent.

No. 25488.

Supreme Court of South Carolina.

Submitted May 30, 2002.

Decided June 24, 2002.

Assistant Appellate Defender Tara S. Taggart of South Carolina Office of Appellate Defense, of Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General B. Allen Bullard, and Assistant Attorney General Elizabeth R. McMahon, all of Columbia, for respondent.

## ON WRIT OF CERTIORARI

Justice BURNETT:

We granted a writ of certiorari to review the decision of the post-conviction relief (PCR) judge denying petitioner relief. We reverse.

### *ISSUE*

Is there any evidence of probative value which supports the PCR judge's conclusion trial counsel were not ineffective for failing to object to the trial judge's incorrect response to the jury's question concerning the effect of its inability to render a verdict on the murder charges? [1]

### *DISCUSSION*

Petitioner was indicted on two counts of murder, two counts of assault and battery with intent to kill (ABIK), two counts of

---

1. Petitioner was represented by two attorneys.

armed robbery, criminal conspiracy, and possession of a firearm during the commission of a violent crime. At trial, he only contested the murder charges.[2] An investigator with the Sheriff's Department testified petitioner was not the triggerman in either murder. The State based the murder charges against petitioner on a "hand of one, hand of all" theory.

The evidence established petitioner and three other men planned to rob a drug dealer in West Columbia. According to co-defendant Fletcher Archie, petitioner also stated he intended to find someone who had shot him on a previous occasion.

Trial testimony established petitioner provided the transportation to West Columbia, distributed the four guns to the assailants, and gave orders to both the victims and other assailants. While there was no evidence the robbery of the intended victim was accomplished, the four men participated in two shootings at two different apartment complexes. It was undisputed petitioner shot one surviving victim in the foot and the other in the knee. According to co-defendant Archie, petitioner stated the victim he shot in the knee looked like the man who had previously shot him.

After deliberating for 1½ hours, the jury asked to be recharged on ABIK. The trial judge reinstructed the jury accordingly and the jury returned to its deliberations.

An hour later, the trial judge returned the jury to the courtroom and inquired if it were close to reaching a verdict. The foreperson replied, "we have reached a verdict on six of the eight charges." The trial judge asked if the jury would like to continue deliberating or return in the morning to deliberate. The foreperson answered, "we are at an impasse on the two counts and I think we need to sit on it." When asked if he thought the jury would be able to reach a verdict on the two counts, the foreperson stated, "not immediately."

---

2. During opening argument, trial counsel stated:

> ... [P]etitioner, in fact, did shoot a young man through the foot. He did, in fact, shoot a young man in the knee.
>
> Those charges are assault and battery with intent to kill. I tell you now when you go in that jury room, [petitioner] admits that he did that. He admits everything in these indictments except that he did not kill anybody. He did not fire a shot from his gun that killed anyone. It was never his intention to kill anyone.

After a bench conference, the trial judge asked the jury to continue its deliberations. Before sending the jury back to the jury room, he gave an *Allen* charge.[3]

An hour later, the trial judge again asked the foreman if the jury was "any closer to a verdict on those two counts than you were before." The foreperson replied the jury was still in the same position. The trial judge then asked, if he released the jury for the evening, was it possible to reach a verdict on the two unresolved counts. The foreperson replied he did not believe the opinions would change. Another juror indicated she was hopeful a verdict could be reached. A third juror asked if the jury could pose some questions prior to renewed deliberations and the trial judge responded affirmatively.

The following morning, the jury submitted a written question asking the judge whether the guilty verdicts would stand on the other six charges should a unanimous decision not be reached on the two counts of murder or would the whole case be retried. After discussion between the judge, solicitor, and trial counsel and, before the jury returned to the courtroom, the following occurred:

> COUNSEL: The question the jury posed was not any confusion about the law or anything. The question was if they cannot reach a unanimous verdict on two counts of murder—
>
> THE COURT: It's a mistrial.
>
> COUNSEL:—will he have to be retried on the other charges as well? That's all they asked. They didn't ask to be recharged on the law.
>
> THE COURT: Would he have to be retried on the other charges too?
>
> COUNSEL: Right ...
>
> THE COURT: "If we cannot reach a unanimous decision on the two counts of murder, will the other charges be retried as well?["] You wouldn't have to retry the other charges, would you?
>
> COUNSEL: I don't know about that. . . .

---

3. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

After the jury returned to the courtroom, the trial judge instructed:

> *... you gave me a question. If you do not reach a verdict on the two counts, it would be a mistrial. The whole case would have to be tried over.*

It's not expected that we can get a more intelligent jury than you 12, and some jury will have to try this. The State and the defense will have to go through the expense, the County and the State. It's not expected that we can get a more intelligent jury.

So, I will ask you to continue deliberating. If I can enlighten you on the law, you can ask me what you want me to explain to you. If not, I will ask you to continue your deliberations.

(Emphasis added).

After deliberating shortly over an hour, the jury returned its verdict acquitting petitioner of one murder charge (Edmond murder) and convicting him on the remaining seven charges, including one murder (Joyner murder).

 In order to establish ineffective assistance of counsel, a PCR applicant must establish trial counsel's performance fell below an objective standard of reasonableness and, "the deficient performance prejudiced the [applicant] to the extent that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'." *Cherry v. State,* 300 S.C. 115, 117–18, 386 S.E.2d 624, 625 (1989), *quoting Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." *Id.* The appellate court must affirm the PCR court's decision when its findings are supported by any evidence of probative value. *Cherry v. State, supra.* However, the appellate court will not uphold the findings of the PCR court if there is no probative evidence to support those findings. *Holland v. State,* 322 S.C. 111, 470 S.E.2d 378 (1996).

The PCR judge held the trial judge's incorrect response to the jury's question did not coerce the jury's verdict on the murder charges. Specifically, the PCR judge found:

... despite the jury's written question, it is pure speculation to claim the jury reached its unanimous verdicts on the remaining murder counts to avoid a retrial. Neither this Court nor any court can look into the minds of the jury members. Finally, because [petitioner] was acquitted of one murder count, it is clear the jury was not compelled to convict [petitioner] of the murder charges to maintain the remaining convictions.

■ We find counsels' failure to object to the trial judge's response to the jury's question concerning the result if it failed to reach a verdict on the murder charges was deficient. As noted in petitioner's direct appeal, the jury's failure to reach a verdict on any count in the indictment would necessitate a new trial on the particular count, not a new trial of the entire case. *State v. Pauling*, 322 S.C. 95, 470 S.E.2d 106 (1996), *citing State v. Kornahrens*, 290 S.C. 281, 350 S.E.2d 180 (1986), *cert. denied* 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781 (1987). Without objection from counsel, the trial judge instructed the jury to the contrary—that failure to reach a verdict on the murder charges would require a new trial of the entire case. Because the trial judge's response was clearly erroneous, counsel were deficient for failing to object.[4]

■ Moreover, petitioner was prejudiced by counsels' failure to object and have the jury properly instructed that, if it was unable to render a verdict on the murder charges, only the murder charges would be retried. Contrary to the PCR judge's conclusion, it is *not* speculative that the jury reached its verdict (convicting petitioner of one murder while acquitting him of the other) in order to avoid a retrial of the non-

---

4. Trial counsel offered no explanation why they failed to object. Accordingly, this is not a case of "trial strategy." *Stokes v. State,* 308 S.C. 546, 419 S.E.2d 778 (1992) (where counsel articulates a valid reason for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel). Moreover, citation to a 1986 opinion indicates the appellate ruling was not a new holding which counsel could not have anticipated. *Gilmore v. State,* 314 S.C. 453, 445 S.E.2d 454 (1994), *overruled on other grds. Brightman v. State,* 336 S.C. 348, 520 S.E.2d 614 (1999) (Court does not require attorney to be clairvoyant or anticipate changes in the law which were not in existence at the time of trial).

murder charges as the trial judge had instructed. The record indicates the jury was unable to reach a verdict on the murder charges. After being informed its failure to reach a verdict on those charges would require a retrial of the entire case, the jury reached its verdict. Since there is nothing in the record which distinguishes petitioner's involvement (particularly his intent) in the murder for which he was convicted from the murder for which he was acquitted, the trial judge's incorrect answer to the jury's question clearly affected the jury's verdict. While it would have been speculative to assume the trial judge's answer would have coerced the jury if the jury had convicted petitioner of both murders, it is not speculative to conclude the trial judge's answer did coerce the jury which convicted petitioner of one murder and acquitted him of the other. We conclude there is a reasonable probability that, but for counsels' failures to object to the trial judge's improper instruction, the outcome of petitioner's trial would have been different. *See Taylor v. State,* 312 S.C. 179, 439 S.E.2d 820 (1993) (where trial judge gave erroneous instruction on critical issue of intent, PCR applicant was prejudiced by counsel's failure to object); *High v. State,* 300 S.C. 88, 386 S.E.2d 463 (1989) (same); *see also Battle v. State,* 305 S.C. 460, 409 S.E.2d 400 (1991) (where jury asked for written instructions on self-defense, PCR applicant was prejudiced by inadequate instructions). Because petitioner established both that counsels' performances were deficient and that he was prejudiced by the deficient performances, we reverse the order of the PCR judge and remand for a new trial on the Joyner murder. *Holland v. State, supra* (appellate court will not uphold findings of PCR court if no probative evidence supports them).[5]

The order of the PCR judge is **REVERSED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.

---

**5.** Petitioner's remaining convictions are not affected by the outcome of this PCR action.