721 S.E.2d 442

Kareen Donyell LEE, Petitioner,

v.

STATE of South Carolina, Respondent.

No. 4901.

Court of Appeals of South Carolina.

Heard Oct. 5, 2011.

Decided Nov. 2, 2011.

Withdrawn, Substituted and Refiled Dec. 21, 2011.

Appellate Defender Kathrine H. Hudgins, of Columbia, for Petitioner.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Karen Ratigan, all of Columbia, for Respondent.

KONDUROS, J.

In this post-conviction relief (PCR) action, Kareen Donyell Lee contends the PCR court erred in not finding plea counsel ineffective for failing to have him evaluated for competency before his guilty plea when a competency evaluation conducted approximately six months after his plea revealed he had an intelligence quotient (IQ) of 61 and was not competent to stand trial. We affirm.

## FACTS

In June 2005, Lee pled guilty to two counts of breaking into a motor vehicle, unlawful carrying of a pistol, two counts of attempted second-degree burglary, and two counts of second-degree burglary. He was twenty-two years old at the time of the guilty pleas. Lee pled guilty at the same time as two other defendants in unrelated cases. Lee answered last of the three in response to the majority of the plea court's questions and responded similarly to the other two with "Yes, sir" or "No, sir" to most questions. The plea court asked Lee to speak up several times throughout the proceeding. When the plea court asked Lee why he was not speaking up, he responded that he was a "soft spoken person." Lee received concurrent sentences of five years' imprisonment for each charge of breaking into a motor vehicle, one year for unlawful carrying of a pistol, fifteen years for each attempted burglary charge, and fifteen years for each second-degree burglary charge. He did not appeal his guilty pleas and sentences.

At the time of the pleas, Lee was on probation. The guilty pleas were a violation of probation, necessitating a probation violation hearing. Prior to the hearing, a judge ordered a competency evaluation for Lee because his probation violation counsel reported difficulty in communicating. In Lee's December 2005 forensic evaluation conducted by the South Carolina Department of Disabilities and Special Needs (DDSN), he was found not competent to stand trial.

On May 2, 2006, Lee filed a PCR application. Lee's December 2005 forensic evaluation was offered at the PCR hearing. The evaluation indicated Lee scored 61 on a 1996 IQ test. He had completed high school and obtained a driver's permit, but he had no stable employment history. Records cited in the

evaluation revealed Lee had once been hospitalized for behavioral problems, received other mental health services for about five months, was diagnosed with mild mental retardation and disruptive behavior disorder, and had a significant history of setting fires and engaging in cruelty to animals. The evaluation stated that Lee was evaluated in 2002 by the Department of Mental Health to determine his capacity to stand trial. According to the 2005 evaluation, in 2002 the doctor found evidence of mental retardation but issued no opinion on competency and referred Lee to DDSN for further evaluation. However, the 2005 evaluation noted that the solicitor's office notified DDSN in 2004 that it was not going to pursue further evaluation through DDSN.

The 2005 evaluation further stated Lee demonstrated a basic understanding of the charges that resulted in his probation and those he committed while on probation. He knew crimes vary in seriousness and punishment is commensurate. He defined guilty as "you did it" but was unsure of defense counsel's role. While Lee understood the solicitor was an antagonistic party, he did not seem to understand the requirement that the solicitor prove guilt. The evaluation concluded Lee was not able to communicate effectively with counsel and "the fact that he would not be able to provide adequate assistance in his defense are sufficient grounds for issuing an opinion that he is not at this time competent to stand trial."

The psychologist who conducted the evaluation testified at the PCR hearing. He said Lee may have been found incompetent in the past, he had received mental health treatment as early as 2000, and his records from school and DDSN indicated a history of mental retardation. Specifically, the psychologist stated Lee did not understand the plea bargain concept. The psychologist believed Lee's incompetence was caused by mental retardation which would have been present in June 2005, the time of the guilty pleas. However, the psychologist admitted he had only met with Lee one time and acknowledged his report stated Lee would not be competent for a hearing held sometime after December 2005.

Lee's aunt testified he lived with her for five years after his mother died. His aunt said Lee began to collect social security checks for a disability based on his mental status when he

turned eighteen years old. His aunt averred she informed plea counsel Lee had a disability and was "not supposed to" make decisions without her or Lee's brother. She said plea counsel agreed to inform her of Lee's court date but plea counsel failed to do so. She stated that in the same conversation, plea counsel informed her she may be going on maternity leave. His aunt testified she visited Lee in jail the week before he pled guilty and he never mentioned his upcoming court date. She agreed Lee had entered guilty pleas in the past following earlier evaluations, but she was present for those pleas. Additionally, she testified he underwent a mental evaluation in 2002 through the court system. Lee's aunt further testified that Lee was a follower. She explained: "[I]f it sounds like he should say yes, then he would say yes.... [I]f it sounds like he should say no, then he will say no."

Plea counsel testified she met with Lee at least three times and he appeared to understand a discussion about pleading guilty. Plea counsel said when she has clients facing serious charges, she makes them explain their situation so she knows they understand. In Lee's case, the explanation he gave did not raise any "red flags." Plea counsel did not recall the discussion with Lee's aunt, and she stated no one informed her of Lee's prior mental evaluations or disability checks. Plea counsel confirmed she was pregnant around the time of Lee's case and did take maternity leave for a few months. Plea counsel said Lee never told her of any prior mental health treatment. Plea counsel testified:

> One of my standard questions I ask defendants even before we plea is do you have any type of mental disability, have you ever been treated for any type of mental disability in the past? His response to that was no. That was before the plea.

> He never informed me of that during any of the previous meetings.... If he doesn't tell me that he's got a problem, I don't see a problem in talking with him and he understands what I'm speaking with him about and indicates that he understands, I'm not a mind reader. I'm not able to find that out.

She admitted if Lee had told her he was on disability, she would have investigated, but she stated she had "no basis to initiate any type of investigation."

The PCR court found Lee failed to prove he was incompetent on the day of his guilty plea. The PCR court noted Lee told the plea court he did not suffer from any mental condition. Additionally, the PCR court found persuasive the psychologist's admission that the evaluation could not speak to Lee's competency at the time of the plea hearing. Further, the PCR court noted Lee had several prior convictions in 2000, 2001, 2003, and 2004, but he presented no evidence that he had been evaluated in connection with those plea hearings. The PCR court found plea counsel's testimony was "extremely credible" and Lee failed to prove her ineffective. The PCR court found plea counsel met several times with Lee, was never informed of his mental health history, and was "not required to be clairvoyant." The PCR court denied Lee's application. Lee petitioned this court for writ of certiorari, which we granted. This appeal followed.

## STANDARD OF REVIEW

An appellate court gives great deference to the PCR court's findings of fact and conclusions of law. *Shumpert v. State,* 378 S.C. 62, 66, 661 S.E.2d 369, 371 (2008). If matters of credibility are involved, then this court gives deference to the PCR court's findings because this court lacks the opportunity to directly observe the witnesses. *Solomon v. State,* 313 S.C. 526, 529, 443 S.E.2d 540, 542 (1994). Any evidence of probative value in the record is sufficient to uphold the PCR court's ruling. *Caprood v. State,* 338 S.C. 103, 109–10, 525 S.E.2d 514, 517 (2000).

## LAW/ANALYSIS

Lee asserts plea counsel was ineffective in failing to obtain a competency evaluation of him prior to his guilty pleas. We disagree.

In order to establish a claim of ineffective assistance of counsel, a PCR applicant must prove counsel's performance was deficient, and the deficient performance prejudiced the applicant's case. *Strickland v. Washington,* 466 U.S. 668, 687–88, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Cherry v. State,* 300 S.C. 115, 117, 386 S.E.2d 624, 625 (1989). To show counsel was deficient, the applicant must establish counsel

failed to render reasonably effective assistance under prevailing professional norms. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052; *Cherry,* 300 S.C. at 117, 386 S.E.2d at 625; *see also Matthews v. State,* 358 S.C. 456, 459, 596 S.E.2d 49, 50–51 (2004) ("In order to find that petitioner's trial counsel was ineffective for refusing to request a *Blair*[1] hearing on petitioner's competency to stand trial, petitioner must show that counsel was deficient and that the deficiency prejudiced the outcome of petitioner's proceedings."). To show "prejudice within the context of counsel's failure to fully investigate the petitioner's mental capacity, 'the [petitioner] need only show a reasonable probability that he was either insane at the time [the crime was committed] or incompetent at the time of the plea.'" *Matthews,* 358 S.C. at 459, 596 S.E.2d at 50 (alterations by court) (quoting *Jeter v. State,* 308 S.C. 230, 233, 417 S.E.2d 594, 596 (1992)).

Due process prohibits the conviction of an incompetent defendant, and this right may not be waived by a guilty plea. *Jeter,* 308 S.C. at 232, 417 S.E.2d at 595. To prevail in a PCR action, the petitioner must prove by a preponderance of the evidence he was incompetent when he entered his guilty plea. *Matthews,* 358 S.C. at 458–59, 596 S.E.2d at 51; *see also* Rule 71.1(e), SCRCP. Any evidence of probative value to support the PCR court's factual findings is sufficient to uphold those findings on appeal. *Jeter,* 308 S.C. at 232, 417 S.E.2d at 596. "The test of competency to enter a plea is the same as required to stand trial." *Id.* "The accused must have sufficient capability to consult with his lawyer with a reasonable degree of rational understanding and have a rational as well as factual understanding of the proceedings against him." *Id.*

In *Matthews,* 358 S.C. at 459, 596 S.E.2d at 51, a psychiatrist, in describing petitioner's mental condition, referred to petitioner's quick, nonsensical responses to questions. When the psychiatrist "asked petitioner where he was, he gave the quick, basic response of 'here.' When asked if he was in a prison, cafeteria, or zoo, petitioner responded, 'zoo.' When asked what his name was, petitioner responded, 'me.'" *Id.* at 459–60, 596 S.E.2d at 51. The supreme court reversed the PCR court's finding counsel effective, holding that through the

1. *State v. Blair,* 275 S.C. 529, 273 S.E.2d 536 (1981).

psychiatrist's testimony, "petitioner clearly established by a preponderance of the evidence that he was incompetent at the time he entered his guilty plea. Consequently, petitioner's trial counsel was deficient for failing to request a *Blair* hearing so that the court could examine petitioner's fitness to stand trial." *Id.* at 460, 596 S.E.2d at 51. The supreme court held "trial counsel's failure to request a *Blair* hearing prejudiced petitioner under the *Jeter* standard because there was, at minimum, a 'reasonable probability' that petitioner was incompetent at the time of his guilty plea." *Id.*

In *Jeter*, 308 S.C. at 233, 417 S.E.2d at 596, the court found "[t]he evidence addressed at the PCR hearing was insufficient to show deficient performance on the part of [plea] counsel." Plea counsel discussed petitioner's case and his options with petitioner on several occasions prior to his plea. *Id.* The supreme court found plea counsel reasonably relied on his own perceptions, particularly because counsel was familiar with petitioner from previous representation. *Id.* The family who testified at the PCR hearing never raised any concerns regarding petitioner's competency to plea counsel. *Id.* The supreme court affirmed the PCR's court determination that plea counsel's failure to request "a psychiatric evaluation was not outside the range of reasonable professional assistance." *Id.*

In *Matthews*, the supreme court did not specifically address trial counsel's deficiency. Seemingly, the court found petitioner's mental state so obvious that trial counsel would have had to be deficient not to notice. Unlike *Matthews*, in which a psychiatrist testified defendant answered questions with non-sensical answers and that his mental capacity had been the same for a number of years, this case is more aligned with *Jeter*, as plea counsel testified that Lee's answers did not raise any suspicions. Even the psychiatrist testified Lee had a basic understanding of his charges and to some degree the criminal process.

In this case, under our standard of review, we are constrained to affirm the PCR court's decision.[2] Some evidence

---

2. We do not know Lee's adaptive functioning and whether plea counsel should have recognized a cognitive issue from her conversations with him, as in *Matthews*. We encourage defense counsel to always inquire

in the record supports the PCR court's findings. Although the PCR court found Lee did not present evidence of incompetence at the time of plea, the psychiatrist's testimony that Lee's mental status dated back to when he was in school and he had a documented history of mental retardation was sufficient to show a reasonable probability that he was incompetent at the time of the plea. However, Lee also had to demonstrate plea counsel's performance was deficient. Plea counsel could not be deficient if she had no indication of Lee's mental status.[3] Although Lee's aunt testified she informed plea counsel of Lee's mental status, plea counsel testified she did not recall a conversation with her. Further, plea counsel testified Lee indicated he had no prior mental conditions and none of his answers led her to suspect otherwise. We are required to defer to the PCR court's findings of credibility, and the PCR court found plea counsel "extremely credible." Accordingly, the PCR court's order is

**AFFIRMED.**

FEW, C.J., and THOMAS, J., concur.

---

whether a defendant receives a Supplemental Security Income (SSI) check or a Social Security Administration (SSA) check as a threshold determination. While our holding is appropriate under our standard of review, a man with a questionable IQ and a history with mental health and mental retardation issues pled guilty on several occasions with multiple lawyers without the benefit of a *Blair* hearing.

**3.** At oral argument, Lee argued plea counsel should have been alerted to his mental status due to a prior evaluation. The record contains no documentation of the evaluation. It does contain Lee's aunt's statement that an evaluation occurred, the psychologist's reference to it in his report and his testimony, and PCR counsel's questioning plea counsel if she was aware Lee was evaluated in 2002 regarding his capacity to stand trial in another case. PCR counsel stated that the recommendation from the examination was to refer Lee to DDSN for further evaluation as to his competency. However, PCR counsel posited that evaluation did not occur "because [the solicitor's office] informed DDSN via letter that they were not going to pursue further evaluation through DDSN." Plea counsel responded that she did not know anything about the evaluation and what had occurred afterwards.