781 S.E.2d 732

**Farid A. MANGAL, Petitioner,**

**v.**

**STATE of South Carolina, Respondent.**

**Appellate Case No. 2012–212701.**
**No. 5372.**

Court of Appeals of South Carolina.

Heard Nov. 3, 2015.
Decided Dec. 30, 2015.
Rehearing Denied Feb. 22, 2016.

John R. Ferguson, of Cox Ferguson & Wham, LLC, of Laurens, for petitioner.

Attorney General, Alan McCrory Wilson, Assistant Deputy Attorney General, Suzanne Hollifield White, and Assistant Attorney General, Alicia A. Olive, all of Columbia, for respondent.

## ON WRIT OF CERTIORARI

MCDONALD, J.

In 2007, Farid A. Mangal was convicted of first-degree criminal sexual conduct (CSC) with a minor, two counts of second-degree CSC, lewd act upon a minor, and incest. He appeals from the denial and dismissal of his application for post-conviction relief (PCR), arguing (1) trial counsel was ineffective for failing to object to bolstering, (2) trial counsel was ineffective for failing to move for a mistrial in response to bolstering, (3) trial counsel was ineffective for failing to object to the qualification of a forensic interviewer as an expert, (4) trial counsel's performance as a whole was deficient and prejudicial, (5) the PCR court erred in finding the bolstering

issue was not raised, and (6) PCR counsel was ineffective for not sufficiently raising the bolstering issue. We reverse and remand.

## FACTS

Victim, who was nineteen years old at the time of the 2007 trial, testified that her father (Petitioner) sexually abused her from the time she was ten years old until she was sixteen. The first instance of alleged abuse occurred when Petitioner took her into a bedroom, forced her to remove her pants, and rubbed his penis around her anal area. Victim stated there was "some sort of penetration" on this occasion, but not full penetration. Victim testified that after such abuse began, it occurred nearly every day when she came home from school. According to Victim, she was fourteen or fifteen the first time full penetration occurred, and Petitioner took her virginity. Victim stated Petitioner used condoms occasionally and once pointed out a freckle on the shaft of his penis. According to Victim, the abuse became more painful and aggressive as she aged. Victim stated she initially disclosed the abuse to her brother (Brother) after she refused Petitioner's advances one night, and Petitioner took out his anger on Brother the next day.

On cross-examination, trial counsel questioned Victim extensively concerning inconsistencies in her story and her dislike for Petitioner's strict parenting methods.[1] Victim acknowledged that once Petitioner was out of the house, she began drinking, smoking, and had to seek counseling. Victim was presented with testimony from a 2005 family court hearing where she stated she began cutting herself because she was unhappy about her accusations against Petitioner. In this prior family court testimony, Victim stated she did not want to get Petitioner in trouble, she just wanted him away from her.

Brother testified there were numerous occasions over the years when Petitioner took Victim into a locked room for twenty or thirty minutes, and Victim would leave the room visibly upset and crying and would go to the bathroom.

---

1. Victim testified that Petitioner did not let her date or have friends, and would not allow her to talk on the phone, have pets, or celebrate Christmas. Additionally, family members testified that Petitioner was physically abusive.

Pediatrician Dr. Nancy Henderson testified as an expert "in the examination, diagnosis, and treatment of child sexual abuse." Dr. Henderson testified she examined Victim in July 2004 and discovered a "marked narrowing" on a portion of Victim's hymen, which she believed was "a sign of some type of penetration." During her testimony, the following exchange occurred:

> [The State:] Doctor Henderson, do you have an opinion, within a reasonable degree of medical certainty based upon your education, training, and experience and based upon your findings on examination of [Victim], whether those findings are consistent with a penetrating injury?
>
> [Dr. Henderson:] Based on the history that she shared with me and based on my examination I felt that it was consistent . . . that she had been abused.
>
> [The State:] All right. Also opinion as to whether she was sexually abused, that opinion is?
>
> [Dr. Henderson:] That she had been, yes, sir.

Dr. Henderson further testified that there could be "full penetration without any kind of trauma to the hymenal tissue" due to the effects of estrogen on the tissue during puberty. When asked whether this case involved "narrowing [of the hymen] consistent with penetration," Dr. Henderson stated, "Yes, sir."

When asked whether she could tell the jury that her findings were the "result of penetration by a penis," Dr. Henderson responded, "I can't say that the actual result that I saw was caused by the penis, but based on the history that she shared, and she denies any other kind of trauma to that area . . . my conclusion is . . . as I stated." When asked whether she based her decision on possibly untrue information she received from Victim, Dr. Henderson stated, "I based it on the information received by my patient, which is invaluable information any doctor receives when they are examining a patient." When asked whether she assumed Victim's information was true, Dr. Henderson responded, "Based on the way she shared it and all the information that she shared, yes." Dr. Henderson acknowledged that she learned there were allegations that Petitioner engaged in vaginal and anal intercourse with Victim and that the abuse began at age ten.

Finally, Dr. Henderson stated that it varied between females as to whether a hymen or remnants of a hymen remained after childbirth or prolonged sexual intercourse, and that she had seen many sexually active teenagers with normal examination results.

The State also presented testimony from forensic interviewer Wiley Garrett, who was qualified as an expert in forensic interviewing without objection. Garrett testified that Victim's disclosure was "clear, consistent, and compelling."

Trial counsel's theory of the case was that Victim and Victim's mother (Mother) fabricated the abuse allegations because Victim wanted freedom from Petitioner's strict parenting and Mother wanted to continue having an extra-marital affair. Petitioner testified in his defense, denied the allegations against him, and stated that Victim and Mother "had a plan ... going on."

Mother admitted that when Petitioner was arrested, she gave police a statement indicating Victim had disclosed the abuse to her but Victim stated she had not allowed penetration or oral sex. Mother also made a drawing of Petitioner's penis and indicated there was a dark marking like a mole or a freckle on the head of his penis but not on the shaft. During cross-examination, Mother stated that she believed Victim's allegations.

Petitioner's family doctor testified about a January 2002 record created by a former doctor in his practice that stated Victim's hymen was intact. The family doctor explained that based on his nearly fifty years of practice, he expected the hymen of a sexually active person to not remain intact. Dr. Medlock also stated that another record indicated that on September 29, 2003, Victim had a rectal examination that was within normal limits.

Finally, a detention center employee who inspected Petitioner's penis testified that he did not recall seeing a freckle or a mole on Petitioner's penis.

## STANDARD OF REVIEW

"In a PCR proceeding, the burden is on the applicant to prove the allegations in his application." *Ard v. Catoe*, 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007). "Any evidence

of probative value to support the PCR court's factual findings is sufficient to uphold those findings on appeal." *Lee v. State,* 396 S.C. 314, 320, 721 S.E.2d 442, 446 (Ct.App.2011). Thus, an appellate court "gives great deference to the PCR court's findings of fact and conclusions of law." *Porter v. State,* 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006). "If matters of credibility are involved, then this court gives deference to the PCR court's findings because this court lacks the opportunity to directly observe the witnesses." *Lee,* 396 S.C. at 319, 721 S.E.2d at 445.

## LAW/ANALYSIS

"In order to receive relief for ineffective assistance of counsel, a defendant must make two showings." *Edwards v. State,* 392 S.C. 449, 456, 710 S.E.2d 60, 64 (2011). "First, he must show that his trial counsel's performance was deficient, meaning that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "Second, he must demonstrate that this deficiency prejudiced him to the point that he was deprived of a fair trial whose result is reliable." *Id.*

## I. Preservation of Bolstering Issue[2]

█ Petitioner argues the PCR court erred in finding the bolstering issue was not raised because PCR counsel questioned trial counsel on the subject, and PCR counsel raised the issue again in his Rule 59(e), SCRCP, motion. We agree.

At the PCR hearing, trial counsel admitted that he did not object when Dr. Henderson was asked whether her findings were consistent with a penetrating injury and she responded that she believed Victim was abused. On cross-examination, trial counsel stated he expected Dr. Henderson to opine that Victim was abused because her testimony was "canned testimony." Trial counsel explained that he had been in cases with Dr. Henderson before, and he probably should have objected when she gave an opinion on the ultimate issue. On redirect,

---

2. We have chosen to analyze Petitioner's Issue 5 first and then address Issues 1 and 2 together.

trial counsel was asked if the comment struck "a cord as improper bolstering" during trial, and trial counsel stated it did not. During PCR counsel's summation, he stated that Dr. Henderson's opinion that abuse occurred should have received an objection because it was improper vouching. PCR counsel also cited case law supporting his position.

The PCR court's order did not address the issue concerning Dr. Henderson's testimony; thus, Petitioner filed a Rule 59(e) motion requesting a specific ruling on the bolstering issue. The PCR court then issued an order stating it would not alter or amend its judgment and "[a]lthough [Petitioner] alleges that the issues in the [m]otion were raised at the hearing[,] . . . this [c]ourt finds that the issues were not presented . . . in the application or in an amendment and no testimonial evidence from [Petitioner] was presented in support of these allegations."

The Uniform Post–Conviction Procedure Act provides that "[a]ll grounds for relief available to an applicant under this chapter must be raised in his original, supplemental or amended application." S.C.Code Ann. § 17–27–90 (2014). However, in *Simpson v. Moore,* the supreme court considered an issue that was not raised specifically in a petitioner's application. 367 S.C. 587, 599–600, 627 S.E.2d 701, 707–08 (2006). The supreme court noted that during the PCR hearing, both the petitioner's trial counsel and a witness for the State testified about the issue. *Id.* at 599, 627 S.E.2d at 707–08. The supreme court held that petitioner "should have been permitted to amend his PCR application to conform to the evidence presented." *Id.* at 599, 627 S.E.2d at 708.

Similarly, we hold the issue here concerning Dr. Henderson's testimony is preserved for our consideration. Not only was trial counsel questioned and cross-examined about the issue during the PCR hearing, PCR counsel specifically mentioned it again during his concluding remarks. When the PCR court's order failed to address the issue, PCR counsel took appropriate action to preserve it by requesting a ruling in a Rule 59(e) motion. *See Humbert v. State,* 345 S.C. 332, 337, 548 S.E.2d 862, 865 (2001) (holding when a PCR court fails to rule on an issue, the petitioner must file a Rule

59(e), SCRCP, motion requesting a ruling on the issue to preserve it for review).

Accordingly, we hold the bolstering issue—as it related to Dr. Henderson's testimony—is preserved for review. However, we find any bolstering issues related to other witnesses are unpreserved because they were not raised in Petitioner's PCR application, the PCR hearing, or in the Rule 59(e) motion. *See id.* at 338, 548 S.E.2d at 866 (holding arguments not raised to and ruled upon by the PCR court are not preserved for review).

## II. Bolstering

Because the bolstering issue as it relates to Dr. Henderson's testimony was preserved, we must next determine whether trial counsel was ineffective for failing to object or move for a mistrial in response to Dr. Henderson's comments.

■ "The law is clear that it is improper for a witness to give testimony as to his or her opinion about the credibility of a child victim in a sexual abuse matter." *State v. Hill,* 394 S.C. 280, 294, 715 S.E.2d 368, 376 (Ct.App.2011) (citing *State v. Dawkins,* 297 S.C. 386, 393–94, 377 S.E.2d 298, 302 (1989); *State v. Dempsey,* 340 S.C. 565, 568–71, 532 S.E.2d 306, 308–09 (Ct.App.2000)).

■ At the PCR hearing, trial counsel admitted he did not object when Dr. Henderson was asked whether her findings were consistent with a penetrating injury and she responded that she believed Victim was abused. Trial counsel testified there was no reason he did not object to Dr. Henderson's answer, and he stated that it may have had a significant impact on the jury. On cross-examination, trial counsel reiterated that the case centered on credibility, and he did not remember any physical evidence against Petitioner.

At trial, Dr. Henderson was qualified as an expert "in the examination, diagnosis, and treatment of child sexual abuse." Thus, it was proper for her to opine that based on her examination, Victim's injuries were consistent with sexual abuse. *See* Rule 702, SCRE ("If ... specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testi-

fy thereto in the form of an opinion or otherwise."); *cf. State v. Douglas,* 380 S.C. 499, 504, 671 S.E.2d 606, 609 (2009) (finding no prejudice from a forensic interviewer's allegedly improper testimony when there was also evidence that a pediatric nurse practitioner examined the victim and determined she had vaginal tearing and scarring consistent with past penetration). However, she stated her opinion was based not only on her examination, but also "on the history that [Victim] shared with [her]." Directly after this comment, Dr. Henderson opined that Victim had been sexually abused. On cross-examination, Dr. Henderson elaborated on these statements and testified that "based on the history that [Victim] shared, and she denies any other kind of trauma to that area . . . my conclusion is . . . as I stated."

When asked whether she based her decision on possibly untrue information from Victim, Dr. Henderson stated, "I based it on the information received by my patient, which is invaluable information any doctor receives when they are examining a patient." When asked whether she assumed Victim's information was true, Dr. Henderson responded, "Based on the way she shared it and all the information that she shared, yes."

We believe there is no other way to interpret these comments other than to mean that Dr. Henderson believed Victim was truthful. *See State v. Chavis,* 412 S.C. 101, 109, 771 S.E.2d 336, 340 (2015) (finding a child abuse assessment expert's recommendation that the defendant should not be around the victim for any reason was improper because it could only be interpreted as the expert's believing the victim's sexual abuse claims); *State v. Jennings,* 394 S.C. 473, 480, 716 S.E.2d 91, 94 (2011) (finding an expert's reports were erroneously admitted when there was "no other way to interpret the language used in the reports other than to mean the forensic interviewer believed the children were being truthful"); *Dempsey,* 340 S.C. at 568–72, 532 S.E.2d at 308–10 (finding a child sex abuse expert's testimony improperly vouched for a victim's credibility when the expert concluded victim was reliable and the expert testified that a very high rate of children who made sex abuse allegations were truthful); *Dawkins,* 297 S.C. at 393–94, 377 S.E.2d at 302 (holding a psychologist's testimony indicating he believed a victim's allegations were genuine was improper). Accordingly, Dr. Henderson's

testimony was improper bolstering, and trial counsel was deficient for failing to object to it or otherwise bring it to the trial court's attention.

Additionally, we find Petitioner is able to demonstrate prejudice. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052 (defining prejudice as a reasonable probability that but for trial counsel's errors, the result of the proceeding would have been different). As trial counsel admitted, the case lacked physical evidence and hinged on credibility. *See Jennings,* 394 S.C. at 480, 716 S.E.2d at 94–95 (holding the erroneous admission of reports that contained vouching language was not harmless when the children's credibility was the most critical determination in the case) (citing *State v. Ellis,* 345 S.C. 175, 178, 547 S.E.2d 490, 491 (2001) ("An ... improper opinion which goes to the heart of the case is not harmless.")). During the trial itself, trial counsel repeatedly sought to attack Victim's credibility through cross-examination, and his theory of the case was that the abuse allegations were fabricated by Victim and Mother. Given a lack of physical evidence, we believe Dr. Henderson's testimony was critical because she explained how Victim—who claimed full penetration occurred on multiple occasions—had a narrowed but otherwise intact hymen. As a result, Dr. Henderson's improper testimony insinuating that she found Victim credible was particularly prejudicial.

Accordingly, we reverse the PCR court's finding that trial counsel was not ineffective for failing to object or move for a mistrial in response to bolstering testimony given by Dr. Henderson.

In light of our decision regarding the bolstering issue, we decline to address Petitioner's remaining arguments. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when the disposition of prior issues is dispositive).

## CONCLUSION

We reverse the PCR court's dismissal of Petitioner's PCR application and remand to the trial court for a new trial.

**REVERSED AND REMANDED.**

SHORT and GEATHERS, JJ., concur.