783 S.E.2d 817

Stephen SMALLS, Petitioner,

v.

STATE of South Carolina, Respondent.

Appellate Case No. 2012–212553.

No. 5378.

Court of Appeals of South Carolina.

Heard Oct. 20, 2015.

Decided Feb. 10, 2016.

Rehearing Denied April 21, 2016.

Appellate Defender, Kathrine Haggard Hudgins, of Columbia, for petitioner.

Attorney General, Alan McCrory Wilson and Assistant Attorney General, Daniel Francis Gourley, II, both of Columbia, for respondent.

McDONALD, J.

In this post-conviction relief (PCR) action, Stephen Smalls (Petitioner) argues the PCR court erred in finding trial counsel was not ineffective for failing to (1) object and request a mistrial when an investigator testified Petitioner burglarized someone's house and stole the gun used in the robbery, (2) object when the State erroneously told the jury during its opening statement that police saw Petitioner leaving the scene of the robbery, and (3) preserve an issue concerning the trial court's refusal to allow witness Eugene Green to be cross-examined about his dismissed carjacking charge. We affirm.

## FACTS/PROCEDURAL BACKGROUND

In 2000, a grand jury indicted Petitioner for armed robbery resulting from the robbery of a Bojangles restaurant in Columbia.

At trial, Eugene Green testified that on the night of the robbery, he was helping his manager, Jim Lightner, close the restaurant when Petitioner ran through the door with a shotgun. Green stated Petitioner did not wear a mask. Petitioner ordered Lightner to open the safe, and when Petitioner turned his back, Green fled the restaurant and ran across the street. While on the phone with police at a nearby gas station, Green saw Petitioner leave the restaurant with the gun in his right hand and a white trash bag full of money in his left hand. Green stated that Petitioner approached a dumpster behind the restaurant and a wooden gate connected to a fence with a hole in it. Four days after the robbery, Green identified Petitioner as the robber by selecting Petitioner's photograph from a six-person lineup. Green also identified Petitioner in court and identified the shotgun. Green acknowledged that he had prior convictions for distribution of crack, use of a motor vehicle without consent, and possession of a stolen vehicle. On cross-examination, Green reiterated he was a convicted felon who had been in possession of a stolen car in the past.

Lightner testified that on the night of the incident, the robber grabbed a carryout bag and ordered Lightner to take him to the safe. Lightner testified he could not open the safe in the dark, but when the robber allowed him to turn on the lights, he opened the safe and removed its contents. After the robber put the money in the bag, he ordered Lightner to lie down and then walked away. Several days later, Lightner was able to narrow a photographic lineup down to two individuals, one of whom was Petitioner.

Officers responding to the scene discovered the bag of money and the shotgun approximately ten feet from one another near a fence behind the restaurant—in the direction in which Green indicated Petitioner fled. A fingerprint found on the shotgun matched Petitioner's right-hand middle finger.

When a plain clothes officer in an unmarked car went to Petitioner's home to arrest him, the officer found Petitioner walking along a road holding a small child in his arms. As the officer identified himself and asked Petitioner to stop because he was the subject of a robbery investigation, Petitioner dropped the child and fled. However, police arrested Petitioner later that night hiding in some bushes a few blocks away.

The jury deliberated less than an hour and convicted Petitioner of armed robbery. The trial court sentenced him to twenty-five years' imprisonment.

In 2005, Petitioner filed a PCR application, and the PCR court subsequently held an evidentiary hearing. At the PCR hearing, trial counsel testified that she had only practiced law for a year and a half at the time of Petitioner's trial and had only tried two or three serious felony cases. Trial counsel admitted she failed to make some "very important" objections because of her inexperience, but she acknowledged that the State had evidence to support its case. According to trial counsel, during that time period, her public defender's office lost all of its senior attorneys and the office "didn't have enough experience at that time ... to combat ... these big trials that [they] had in front of [them]." Another attorney who served as second chair during the trial testified she had only six months of criminal practice experience at the time of Petitioner's armed robbery trial.

During this hearing, an issue arose concerning an alleged deal the State made to dismiss a pending carjacking charge against Green. The PCR court ordered the former solicitor who prosecuted Green to obtain Petitioner's case file and Green's case file and review them for information about the deal. When the solicitor's office refused to produce the files because the attorney had left the office for private practice, the PCR court ordered the solicitor's office to provide the files.

In 2011, Petitioner moved for a *de novo* PCR hearing because Petitioner had expended "all reasonable efforts" to review the files. According to the motion, the solicitor's office claimed it did not have a separate file related to Green. Later in 2011, Petitioner entered into a consent order with the State to conduct a second evidentiary hearing. After the second PCR hearing, the PCR court denied Petitioner's application. This court granted Petitioner's petition for certiorari on August 20, 2014.

## STANDARD OF REVIEW

"In a PCR proceeding, the burden is on the applicant to prove the allegations in his application." *Ard v. Catoe*, 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007). "Any evidence of probative value to support the PCR court's factual findings is sufficient to uphold those findings on appeal." *Lee v. State*, 396 S.C. 314, 320, 721 S.E.2d 442, 446 (Ct.App.2011). Thus, an appellate court "gives great deference to the PCR court's findings of fact and conclusions of law." *Porter v. State*, 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006). "If matters of credibility are involved, then this court gives deference to the PCR court's findings because this court lacks the opportunity to directly observe the witnesses." *Lee*, 396 S.C. at 319, 721 S.E.2d at 445.

## LAW/ANALYSIS

"In order to receive relief for ineffective assistance of counsel, a defendant must make two showings." *Edwards v. State*, 392 S.C. 449, 456, 710 S.E.2d 60, 64 (2011). "First, he must show that his trial counsel's performance was deficient, meaning that 'counsel made errors so serious that counsel was

not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "Second, he must demonstrate that this deficiency prejudiced him to the point that he was deprived of a fair trial whose result is reliable." *Id.*

## I. Deficient Performance

### A. *Failure to object to prior burglary testimony*

■ Petitioner argues that the solicitor's intentional improper reference to a prior burglary was irrelevant, prejudicial, and unsubstantiated, and that trial counsel should have objected and moved for a mistrial.

The prior burglary reference occurred during the testimony of lead investigator Paul Mead. During Mead's cross-examination by trial counsel, he was asked about the shotgun's history. Mead stated he discovered the gun was stolen from its registered owner's residence during a burglary in August 1999, and the burglary, to his knowledge, had never been solved. On redirect, the following exchange occurred:

The State: Investigator Mead, first with regards to the shotgun, you were asked where it originally came from?

Mead: Yes, sir.

The State: To make it perfectly clear, [the shotgun] wasn't stolen from [Petitioner's] house in 1999?

Mead: No, it was not.

The State: He burglarized somebody else's house?

Mead: That's correct.

The State: So is there any reason why his fingerprint would be on this weapon—

Mead: None that I know of, sir.

The State:—other than he robbed the Bojangles?

Mead: That's correct.

At the first PCR hearing, trial counsel admitted that it was a "huge problem" when the State mentioned Petitioner burglarized someone else's house, and she had "no idea" why she did not object and move for a mistrial. Later, trial counsel testified that there was no indication who originally stole the

shotgun or how many hands it had passed through during the time between its theft and the Bojangles robbery.

We hold trial counsel was deficient for failing to object to Mead's testimony on redirect concerning the prior burglary. *See State v. Wallace*, 384 S.C. 428, 432, 683 S.E.2d 275, 277 (2009) ("Evidence of other bad acts is not admissible to prove the defendant's guilt except to show motive, identity, existence of a common scheme or plan, absence of mistake or accident, or intent." (citing Rule 404(b), SCRE; *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923))). Here, the State asked the obviously improper question, "He burglarized someone else's house?" and Mead responded, "That's correct."[1] No other evidence in the record supports the contention that Petitioner committed the prior burglary, and no arguments were made demonstrating why this inquiry would have been proper under South Carolina's Rules of Evidence. Accordingly, we find trial counsel was deficient for failing to object to this testimony, which impermissibly suggested Petitioner was responsible for a prior burglary involving the shotgun.

*B. Failure to object during opening statements*

 Petitioner asserts trial counsel was ineffective for failing to object during the State's opening statement when the solicitor falsely told the jury that police saw him at the scene of the robbery.

The comment in question occurred when the State told the jury, "[Petitioner] ultimately took off out of the store with over $1,900 in a plastic bag with the shotgun. The police saw [Petitioner] as he was leaving the store." During the first PCR hearing, trial counsel stated she did not recall the comment itself and she also did not recall any discovery materials indicating police saw Petitioner at the scene of the robbery. Trial counsel continued, "I don't even recall that, but I don't remember any officer seeing him, and if I didn't

---

1. Although the PCR court suggested the "flow" of Mead's examination made it clear the burglary was unsolved, the State was asked during oral argument whether the idea that Petitioner obtained the gun from a house he burglarized was implied or expressly stated. The State candidly responded, "I would have to state it was express, I don't think it was implied, I don't believe there's any other way that you can really take that statement."

object, I should've at that point." Trial counsel testified that because Green had credibility issues, it would have been damaging for the State to tell the jury that police saw Petitioner at the scene of the crime. Trial counsel stated this was "obviously something [she] missed." Additionally, trial counsel stated that had she heard the comment, she would have pointed out the State's failure to produce the referenced evidence during her closing argument.

"The opening statement serves to inform the jury of the general nature of the action and the issues involved so they can better understand the evidence presented." *State v. Kornahrens*, 290 S.C. 281, 284, 350 S.E.2d 180, 183 (1986). "The solicitor is permitted in opening statement to outline the facts the [S]tate intends to prove." *Id.* "As long as the State introduces evidence to reasonably support the stated facts, there is no error." *Id.* "Improper comments do not automatically require reversal if they are not prejudicial to the defendant, and the appellant has the burden of proving he did not receive a fair trial because of the alleged improper argument." *Brown v. State*, 383 S.C. 506, 516, 680 S.E.2d 909, 915 (2009) (quoting *Humphries v. State*, 351 S.C. 362, 373, 570 S.E.2d 160, 166 (2002)). "The relevant question is whether the solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quoting *Humphries*, 351 S.C. at 373, 570 S.E.2d at 166).

We hold trial counsel was deficient for failing to challenge the State's comments either by objecting or by pointing out during the closing arguments that the State failed to prove this assertion. Trial counsel's testimony at the PCR hearing indicated she did not recall any discovery materials indicating that police saw Petitioner at the scene of the robbery. Additionally, during the State's case-in-chief, none of the State's police witnesses testified that they observed Petitioner leaving the restaurant after the robbery. Accordingly, the State failed to introduce evidence during the trial to "reasonably support" this assertion from its opening statement. *Kornahrens*, 290 S.C. at 284, 350 S.E.2d at 183. Even if trial counsel had chosen not to object when the comments were initially made during opening statements, there is no reason she should not have pointed out the State's failure to prove its assertion during her summation. Notably, trial counsel testi-

fied during the PCR hearing that she "absolutely" would have pointed out the comments during her closing argument had she noticed them.

### C. Carjacking Charge

■■■ Petitioner argues trial counsel was either ineffective for failing to question Green about his dismissed carjacking charge or ineffective for failing to preserve the matter of the trial court's refusal to allow such questioning when the charge was dismissed the same day Petitioner's case was called for trial.

At the first PCR hearing, trial counsel testified that on the morning of Petitioner's trial, she learned the State had dismissed Green's carjacking charge.[2] Trial counsel testified about the in camera discussion with the trial court about whether she could impeach Green or question him concerning the dismissal. Ultimately, the trial court disallowed such questioning. Trial counsel explained that she did not put this discussion on the record due to inexperience. Trial counsel stated that had she known the charge was dismissed on the day of trial, she would have insisted that the trial court determine whether Green was aware of it before he testified. Trial counsel testified, "That's huge. We were already hanging our hat on ... Green ... so that information would've been vital. We were just completely deflated."

Green testified at the second PCR hearing under subpoena and stated that at the time of Petitioner's trial, the State asked him to cooperate as a witness but he "didn't want anything to do with it." [3] Green testified that a solicitor told him that if he did not participate in the trial, his "charge wasn't going to go anywhere." Green stated he thought the charge was still pending when he testified against Petitioner. Later, Green stated he would not have testified against Petitioner were it not for the carjacking charge. However, the

---

2. The record reflects that there was a brief pre-trial discussion about which charges trial counsel planned to use for impeachment. When Green's pending carjacking charge was mentioned, the State responded, "[I]t's my understanding, and I talked to the prosecutor this morning and he told me ... that it was dismissed. So it's not pending anymore."

3. Green was also incarcerated at the time of the second PCR hearing.

PCR court found Green's testimony was "somewhat evasive" and noted its observation that Green was speaking with Petitioner prior to and during the hearing.

We hold trial counsel was deficient for failing to preserve the issue of whether she could cross-examine Green about the dismissal of his carjacking charge. Green's testimony provided key evidence for the State's case, yet the State failed to inform trial counsel about the dismissal of his carjacking charge until the morning of Petitioner's trial. Trial counsel neither sought a ruling on the record concerning whether she could cross-examine Green about the dismissal nor requested to proffer any questions about the circumstances surrounding the dismissal or Green's potential motivations. *See Foye v. State*, 335 S.C. 586, 590, 518 S.E.2d 265, 267 (1999) (holding trial counsel was deficient for failing to adequately preserve an issue when trial counsel asked the trial court to question jurors regarding whether they saw petitioner wearing chains but the request was not made on the record). Accordingly, trial counsel's performance was deficient.

## II. Prejudice

 Despite these errors, we hold there was no prejudice resulting from trial counsel's deficient performance because the State presented overwhelming evidence of Petitioner's guilt. *See Smith v. State*, 386 S.C. 562, 566, 689 S.E.2d 629, 631 (2010) ("[N]o prejudice occurs, despite trial counsel's deficient performance, where there is otherwise overwhelming evidence of the defendant's guilt."). First, four days after the armed robbery, Green specifically identified Petitioner as the perpetrator by choosing his photograph from a lineup.[4] Further, although Lightner was unable to select one photograph from a lineup, he narrowed his choices down to two photographs, one of which was Petitioner's. As to the defense's ability to cast doubt upon Green's credibility, Green's status as a convicted felon and testimony regarding several offenses on his criminal record were presented at trial.[5]

---

4. Police investigator Joe Gray's trial testimony confirmed that Green selected Petitioner's photograph from the lineup approximately four days after the robbery.

5. As noted above, Green acknowledged during the trial that he had prior convictions for distribution of crack, use of a motor vehicle

Also, police testified that the shotgun recovered near the restaurant had Petitioner's fingerprint on it. Finally, when police found Petitioner and told him he was the subject of a robbery investigation, Petitioner abandoned the child he was holding and fled. *See State v. Robinson*, 360 S.C. 187, 194–95, 600 S.E.2d 100, 104 (Ct.App.2004) (stating flight from prosecution can be evidence of guilt when there is a nexus between the flight and the charged offense); *State v. Freely*, 105 S.C. 243, 250, 89 S.E. 643, 645 (1916) (recognizing that flight has long been considered some evidence of guilt and referencing Solomon's proverbial wisdom that the "wicked flee when no man pursueth.").

## CONCLUSION

Accordingly, the PCR court's dismissal of Petitioner's application for post-conviction relief is

**AFFIRMED.**

SHORT and GEATHERS, JJ., concur.

without consent, and possession of a stolen vehicle. He was also cross-examined as to his status as a convicted felon.