**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Antonio Sadler, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2018-002173

———————

**ON WRIT OF CERTIORARI**

———————

Appeal From Richland County
Paul M. Burch, Circuit Court Judge

———————

Unpublished Opinion No. 2023-UP_057
Heard June 9, 2022 – Filed February 15, 2023

———————

**AFFIRMED AS MODIFIED**

———————

Appellate Defender Taylor Davis Gilliam, of Columbia, for Petitioner.

Senior Assistant Deputy Attorney General Megan Harrigan Jameson and Assistant Attorney General D. Russell Barlow, II, both of Columbia, for Respondent.

———————

**PER CURIAM:**  In this appeal from the denial of an application for post-conviction relief (PCR), Antonio Sadler argues the PCR court erred in finding plea counsel was not ineffective for failing to ensure Sadler underwent a court-ordered competency evaluation when plea counsel was aware that Sadler had a history of mental health problems and was taking mental health medications at the time of his *Alford*[1] plea.  We affirm as modified.

A Richland County grand jury indicted Sadler for six counts of armed robbery, one count of attempted armed robbery, and three counts of possession of a weapon during the commission of a violent crime.  Pursuant to a negotiated plea agreement, Sadler entered an *Alford* plea to three counts of armed robbery.  The plea court sentenced him to fifteen years' imprisonment suspended upon the service of ten years' imprisonment, three years' probation, and two years' community supervision pursuant to the terms of the plea agreement.  Sadler did not file a direct appeal.  He subsequently filed an application for PCR, which the PCR court dismissed.  This court granted Sadler's request for a writ of certiorari to review the PCR court's order.

At the November 12, 2015 plea hearing, the State informed the plea court Sadler intended to enter an *Alford* plea to three counts of armed robbery in exchange for a negotiated sentence and the dismissal of his remaining charges.  Attorney Ernest Dessausure informed the court he was "standing in" for plea counsel, who was unable to attend the hearing.  A plea colloquy followed, during which Dessausure stated both he and plea counsel explained the indicted charges and sentencing exposure to Sadler and informed him of his constitutional rights.  Sadler indicated he wished to enter an *Alford* plea to three counts of armed robbery and confirmed he understood that each count carried a potential sentence of ten to thirty years' imprisonment.  Sadler asserted he had not taken any medication, drugs, or alcohol in the twenty-four-hour period before the plea hearing.  He stated he understood the collateral consequences of pleading pursuant to *Alford*.  Sadler indicated he did not need additional time to discuss his case with Dessausure or plea counsel and asserted he was "completely satisfied with their services."  He confirmed he was pleading freely and voluntarily and no one had coerced or forced him to enter an *Alford* plea.  He also confirmed no promises outside of the negotiated sentence had been made to induce his plea.  Sadler confirmed he understood all of the plea court's questions and had answered them truthfully.

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970) (allowing a defendant to enter a guilty plea while simultaneously maintaining his innocence).

The State recited its account of the facts related to Sadler's charges and Sadler agreed the State could produce sufficient evidence to prove his guilt beyond a reasonable doubt at trial. The plea court found there was a substantial factual basis for Sadler's plea and it was made voluntarily, knowingly, and intelligently. The issue of Sadler's competency was not raised at the plea hearing.

Thereafter, Sadler filed an application for PCR, alleging plea counsel and Dessausure were ineffective for failing to be "fully aware" of his mental illness and failing to ensure he underwent a court-ordered competency evaluation.

At the PCR hearing, Dessausure testified he agreed to represent Sadler at the plea hearing because plea counsel was unable to attend the hearing. Dessausure stated plea counsel negotiated Sadler's *Alford* plea and sentence before the plea hearing. He testified he did not know or have any indication that Sadler was under the influence of medication during the plea hearing or that Sadler did not understand the plea offer or proceedings.

Sadler testified that a doctor at the detention center diagnosed him with bipolar disorder and acute psychosis after he was arrested. The PCR court admitted without objection a document titled "Order Record History." Sadler alleged this document showed that on the day of the plea hearing, his daily medications included eight hundred milligrams of Tegretol; four hundred milligrams of Depakote; one hundred milligrams of Zoloft; and, four milligrams of Risperdal, which Sadler alleged was an "anti-psychotic" medication. The Order Record History, which appeared to have been provided by the Alvin S. Glenn Detention Center, was dated June 2015, and included notations indicating these medications were "discontinued." The PCR court also admitted a medication distribution log into evidence that Sadler claimed indicated he had taken three milligrams of Risperdal at 9:00 p.m. the night before the plea hearing. However, the hearing transcript is unclear as to which medication and in what amount Sadler took on the morning of the plea hearing. Sadler testified he experienced adverse side effects from his medication, including insomnia, blurred vision, and trembling. However, Sadler did not testify as to whether he had experienced these side effects during the plea hearing.

Sadler explained he had experienced mental health issues for most of his life, but the issues worsened approximately five months before his arrest when he began experiencing extreme paranoia, auditory and visual hallucinations, and a lack of sleep. Sadler claimed that when he was arrested, his family informed plea counsel that he was experiencing "severe mental illness." He stated he informed plea

counsel on multiple occasions that he was suffering from mental illness and was taking medication.  Sadler testified plea counsel informed him and his father that he filed a motion for a competency evaluation.  By order dated May 14, 2014, the circuit court ordered Sadler to submit to a competency evaluation; however, Sadler testified he never underwent a competency evaluation even though he and his family raised the issue with plea counsel several times.  Sadler suggested he did not have a clear understanding of his case or the evidence against him during his pretrial incarceration due to his "medication and mental illness."

Sadler acknowledged his plea agreement resulted from his willingness to act as a jailhouse informant for the State.  He testified that the idea to act as an informant was "loosely at [plea counsel]'s advice" and he gave the State the information "under duress."  Sadler stated plea counsel did not thoroughly review the State's plea offer with him prior to the plea hearing.

Sadler testified he informed Dessausure on the day of the plea hearing that he was on medication and wanted to speak with plea counsel.  Sadler claimed he was anxious and confused on the day of the plea hearing on account of the Risperdal.  According to Sadler, the medicine caused him to "doze . . . off" and his "perception of reality [to be] blunted."  He stated he raised his concerns about the plea offer to Dessausure but Dessausure advised him that it was a "really good deal" and he risked getting a life sentence if he didn't plead guilty.  Sadler maintained he did not know what an *Alford* plea was until the day of the plea hearing and that it was Dessausure's idea for him to enter an *Alford* plea.  He explained he lied to the plea court when he denied taking any medication in the twenty-four-hour period before the plea hearing because Dessausure advised him that he "probably shouldn't say that [he] was on medicine" if he wanted the court to accept his plea.

Sadler's father testified Sadler "wasn't himself" during their visits prior to the plea hearing.  He recalled Sadler seemed to be "a little out of it" and "kind of zombie-like" during the plea hearing.  Sadler's mother testified that on at least one occasion before Sadler was arrested, he exhibited behavior suggesting he was suffering from mental illness.  She recalled Sadler voiced paranoid ideations after his arrest—claiming that someone was trying to "get [him]"— and that he did not seem like himself during his incarceration or at the plea hearing.

Plea counsel testified he met with Sadler at least thirty times over a three-year period and spent at least half an hour with him at each meeting.  Plea counsel indicated that during his meetings with Sadler, they went over discovery and discussed the charges against him.  He maintained Sadler understood their

discussions.  Plea counsel testified he explained to Sadler that if he went to trial and was found guilty, he faced a possible life sentence.  He stated he and Sadler discussed two different strategies to help in mitigation or working out a plea deal with the State: using the results of a competency evaluation to show he suffered from a mental illness; or, assisting the solicitor's office by testifying as an informant.  Plea counsel testified that after discussing with Sadler the strength of the evidence against him, Sadler decided he did not want to undergo a mental competency evaluation.  He stated Sadler agreed with his recommendation that he not undergo a competency evaluation because doing so would undermine Sadler's credibility as an informant.  Plea counsel indicated that after discussing these options with Sadler, they decided Sadler would act as an informant.  Plea counsel explained Sadler acted as an informant in at least three cases but he never actually testified for the State.  He stated that despite not testifying, Sadler was able to secure a plea offer in exchange for his cooperation as an informant.  Plea counsel testified he reviewed the plea offer with Sadler prior to the plea hearing and advised Sadler he would be unable to attend the hearing.  Plea counsel explained he wanted the plea offer to be negotiated so that in the event he was unable to attend the plea hearing, Sadler would know the terms of the offer.

Plea counsel testified he never had any difficulty discussing the case or otherwise communicating with Sadler and Sadler was "always . . . very coherent" and even came up with some of their strategy.  He testified he never had any reason to believe Sadler had any "mental problem[s]" or was unable to assist in his defense.  However, plea counsel stated he was aware Sadler had a history of mental health issues and was taking medication.  He explained his motion for a competency evaluation was purely part of a strategy to negotiate a lesser sentence as part of a plea offer or to mitigate Sadler's sentence if they went to trial.  Plea counsel testified the factual basis for the motion was Sadler's mental health history and the medications he was prescribed during his pretrial incarceration.  He acknowledged he did not seek any additional medical information pertaining to Sadler's mental health history or the medications he was prescribed.  Plea counsel asserted he had "no doubt whatsoever" that Sadler was competent.

The PCR court held Sadler's claim that plea counsel was ineffective for failing to ensure he underwent a competency evaluation was without merit.  The court determined Sadler presented no credible evidence he did not fully understand his plea or the circumstances surrounding his case.  It found plea counsel credibly testified that Sadler was well-able to assist in his defense and Sadler decided not to proceed with the competency evaluation so he could serve as an informant for the State in exchange for a favorable plea offer.  The court concluded plea counsel

moved for a competency evaluation as part of a defense strategy rather than due to a legitimate concern about Sadler's competency. It found plea counsel credibly testified a competency hearing was not held because it would have been potentially harmful to Sadler's role as an informant. Finally, the court found Sadler was not prejudiced because he was able to reach a favorable plea deal by way of becoming an informant.

On appeal, Sadler argues the PCR court erred in finding plea counsel was not ineffective for failing to ensure Sadler underwent the court-ordered competency evaluation when plea counsel was aware Sadler had a history of mental health problems and was taking mental health medications at the time he entered his *Alford* plea. We disagree.

"We defer to a PCR court's findings of fact and will uphold them if there is any evidence in the record to support them." *Mangal v. State*, 421 S.C. 85, 91, 805 S.E.2d 568, 571 (2017). However, "[w]e do not defer to a PCR court's rulings on questions of law." *Id.* "Questions of law are reviewed de novo, and we will reverse the PCR court's decision when it is controlled by an error of law." *Id.* (quoting *Sellner v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016)). "If matters of credibility are involved, then this court gives deference to the PCR court's findings because this court lacks the opportunity to directly observe the witnesses." *Lee v. State*, 396 S.C. 314, 319, 721 S.E.2d 442, 445 (Ct. App. 2011).

Initially, we hold the PCR court applied the incorrect standard in determining plea counsel's alleged deficiency did not prejudice Sadler because plea counsel was able to obtain a favorable plea deal on Sadler's behalf. The PCR court's prejudice analysis should have focused on whether Sadler showed there was a reasonable probability he was incompetent at the time of his plea. *See Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008) ("In order to establish a claim for ineffective assistance of counsel, the applicant must show that: (1) counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) counsel's deficient performance prejudiced the applicant's case."); *Ramirez v. State*, 419 S.C. 14, 21, 795 S.E.2d 841, 845 (2017) ("[W]hen establishing . . . prejudice in the context of plea counsel's failure to request a mental competency evaluation, 'the [applicant] need only show a "reasonable probability" that he was . . . incompetent at the time of the plea.'" (second and third alterations in original) (quoting *Jeter v. State*, 308 S.C. 230, 233, 417 S.E.2d 594, 596 (1992))). Nevertheless, we find Sadler failed to show there was a reasonable probability he was incompetent at the time of his plea. *See Jeter*, 308 S.C. at 232, 417 S.E.2d at 596 (holding that in determining whether an accused is competent to enter a plea, a court must

determine whether he "ha[s] sufficient capability to consult with his lawyer with a reasonable degree of rational understanding and ha[s] a rational as well as factual understanding of the proceedings against him"). At the PCR hearing, Sadler made several claims concerning his mental capacity both at the time of the robberies and the plea hearing, including that he experienced a mental breakdown and suffered from paranoia, hallucinations, and severe mental illness. Sadler also testified he was diagnosed with bipolar disorder and acute psychosis after his arrest. To support these claims, Sadler presented the following evidence: testimony from his mother and father, who testified generally about their concerns regarding Sadler's demeanor during his incarceration and at the plea hearing; the Order Record History; and, a medication distribution log. Although Sadler's medication records *could* have helped support his mental incompetency claims, we find his failure to provide any information at the PCR hearing about the medications listed and what medical conditions they were used to treat diminished the probative value of such records. Moreover, Sadler failed to present any medical records verifying his diagnoses or history of mental illness, testimony from the doctor who diagnosed him with bipolar disorder and acute psychosis, or testimony from doctors who had treated him for mental illness in the past. Without medical evidence or testimony to support the veracity of Sadler's claims, we find the evidence Sadler presented at the PCR hearing was merely speculative as to whether he was incompetent at the time he entered his *Alford* plea. *See Speaks*, 377 S.C. at 399, 660 S.E.2d at 514 ("In post-conviction proceedings, the burden of proof is on the applicant to prove the allegations in his application.").

Furthermore, plea counsel's and Dessausure's testimonies at the PCR hearing contradict Sadler's claim that he was incompetent at the time of his plea. Specifically, plea counsel testified he met with Sadler at least thirty times over a three-year period and Sadler understood their conversations about the discovery in his case and the charges against him. Plea counsel further testified he never had any difficulty discussing the case or otherwise communicating with Sadler and Sadler was "always . . . very coherent" and even constructed some of the case strategy. Plea counsel maintained he never had any reason to believe Sadler had any "mental problem[s]" or was unable to assist in his defense. Dessausure testified Sadler appeared to understand the plea offer and proceedings. The PCR court found plea counsel's and Dessausure's testimonies credible, and we defer to that finding. *See Lee*, 396 S.C. at 319, 721 S.E.2d at 445 ("If matters of credibility are involved, then this court gives deference to the PCR court's findings because this court lacks the opportunity to directly observe the witnesses."). Based on the foregoing, we hold Sadler failed to show his plea was rendered involuntary due to incompetence.

As to Sadler's claim his guilty plea was rendered involuntary due to the medication he was prescribed, we find he failed to show "that his mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights, and of realizing the consequences of his plea." *Garren v. State*, 423 S.C. 1, 15, 813 S.E.2d 704, 712 (2018) (quoting *United States v. Truglio*, 493 F.2d 574, 578 (4th Cir. 1974)). At the PCR hearing, Sadler testified he experienced adverse side effects from his medication, including insomnia, blurred vision, and trembling; however, he did not state whether he was experiencing these side effects at the time of the plea hearing. As we stated, Sadler failed to provide any supporting medical evidence or testimony at the PCR hearing about the medications listed in the Order Record History and medication distribution log regarding any potential adverse side effects or how such medication impacted his cognitive abilities. Furthermore, the medication history was dated June 2015, five months before the plea hearing. With the exception of Sadler's prescription of Risperdal, which he stated was given to him the night before the plea hearing, the record is unclear if Sadler was taking any other mental health medications at the time of the plea as he alleged. Sadler suggested at the PCR hearing that he might have taken medication the morning of the plea hearing; however, Sadler told the plea court he had not taken any medication in the twenty-four-hour period before the hearing. *See Suber v. State*, 371 S.C. 554, 558, 640 S.E.2d 884, 886 (2007) ("In determining guilty plea issues, it is proper to consider the guilty plea transcript as well as evidence at the PCR hearing."). Accordingly, we find Sadler failed to show his mental faculties were so impaired by medication at the time of the plea hearing that it rendered him incompetent. *See Garren*, 423 S.C. at 15, 813 S.E.2d at 712 ("A PCR court must consider 'objective data' about the nature and effect of the medication the defendant had taken and evaluate whether such medication 'had the capability to produce a sufficient effect on his mental faculties to render him incompetent to enter a guilty plea.'" (quoting *United States v. Damon*, 191 F.3d 561, 565 (4th Cir. 1999))).

Based on the foregoing, we hold Sadler failed to show plea counsel's failure to ensure he underwent the court-ordered competency evaluation prejudiced him. We decline to reach the issue of deficiency. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984) ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [applicant] as a result of the alleged deficiencies."); *id.* ("If it is easier to dispose of an ineffectiveness

claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

Accordingly, the PCR court's denial of Sadler's PCR application is

**AFFIRMED AS MODIFIED.**

**WILLIAMS, C.J., and KONDUROS and VINSON, JJ., concur.**